IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 27, 2001 Session

## KRISTIN B. HUNTLEY v. WILLIAM SIDNEY HUNTLEY

**Appeal from the Circuit Court for Hamilton County**
**No. 94-DR-2179     W. Neil Thomas, III, Judge**

_____ **FILED JUNE 14, 2001** _____

**No. E2000-01718-COA-R3-CV**

In this child support modification action, the Trial Court held that a significant variance existed between William Sidney Huntley's ("Defendant") child support obligation set by the parties' Marital Dissolution Agreement ("MDA") and the amount mandated by the Child Support Guidelines ("Guidelines"). The Trial Court ordered an increase in child support consistent with the Guidelines. Because the Guidelines' flat percentage amount of child support totaled approximately $6,600 per month, the Trial Court ordered it be divided between child support payments of $3,100 and payments to a non-educational trust ("Trust") in the amount of $3,500. Defendant appeals and primarily contends that his child support obligation should not be increased to the Guidelines' flat percentage amount because that amount exceeds a reasonable amount of child support and because the MDA controls his child support obligation despite any increases in his income. Kristin B. Huntley ("Plaintiff") also raises issues on appeal, primarily regarding the Trust. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

John P. Konvalinka and Mathew D. Brownfield, Chattanooga, Tennessee, for the Appellant, William Sidney Huntley.

Glenna M. Ramer, Chattanooga, Tennessee, for the Appellee, Kristin B. Huntley.

**OPINION**

## Background

These parties were married in 1983 and have one child ("Child") born in 1987. The parties were divorced in 1995. The MDA was incorporated into the court's final order. The MDA provided that Defendant was to pay "support and maintenance of the Child [in] the sum of $1,440.00 per month and the cost of tuition at a mutually agreed upon primary or secondary private institution. . . ." Further, the MDA ordered that Defendant was to pay alimony *in solido* to Plaintiff in the amount of $5,000 per month for a period of five years with the alimony being reduced to $2,000 per month on April 15, 2000 and continuing for another five-year period.

In 1998, Plaintiff filed a Complaint to Modify in which she sought an increase in child support due to an increase in Defendant's income and the "substantial variance" between Defendant's child support obligation and the obligation set by the Child Support Guidelines ("Guidelines").[1] Defendant, in his Answer, contended that the $1,440 per month in child support plus the cost of the Child's private school tuition, health care costs and other expenses exceeded the Guidelines' amount. Defendant also contended that Plaintiff was wasting assets of three custodial accounts.[2]

Defendant, a stockbroker with Merrill Lynch, is a participant in a deferred compensation plan, the Financial Consultant Capital Accumulation Award Plan ("FCCAAP"), in which Merrill Lynch sets a reserve of 2% of Defendant's gross production for each year. The cash value of that 2% is converted into Merrill Lynch common stock on the last fiscal day of the plan year. After ten years, Defendant becomes 100% vested in the award, and the award is paid in equivalent shares of common stock or cash, depending upon the award's value on the vesting date. The award is recorded as income on Defendant's W-2 in the year Defendant receives the FCCAAP award.

At the time the parties negotiated the MDA in 1995, Plaintiff's CPA expert witness estimated Defendant's future income, including the forthcoming FCCAAP awards. Plaintiff's CPA was nearly 100% accurate in his projected earnings for Defendant. The record on appeal shows that at the trial of this matter, proof regarding Defendant's income from his FCCAAP awards for 1998 and 1999 and anticipated FCCAAP award for 2000 was presented.

The parties tried this matter in February and March 2000. The Trial Court issued a Memorandum Opinion in May 2000, and held that an increase in Defendant's child support obligation was warranted because a significant variance existed between the Guidelines and Defendant's child support obligation under the MDA. Because Defendant's income for 1998, 1999

---

[1] Although Plaintiff in her Complaint used the term "substantial variance," the term used in Tenn. Code Ann. § 36-5-101(a)(1) is "significant variance."

[2] Defendant also counter-claimed for custody of the Child, citing Plaintiff's move to the state of Georgia as a violation of the MDA. Before trial, however, the parties resolved the custody matter, and the Trial Court accordingly dismissed this claim.

and anticipated income for 2000 fluctuated due to his FCCAAP earnings, the Trial Court, in its Memorandum Opinion, prorated the FCCAAP income from the date of entry of the MDA in 1995 and added the prorated amount to Defendant's gross income from other sources.[3] The Trial Court then calculated Defendant's net average income for the years 1998, 1999, and 2000 at $379,440.70. The Trial Court determined that Defendant's child support obligation, according to the Guidelines, was 21% of Defendant's net average monthly income, or approximately $6,600.

In determining whether a downward deviation from the Guidelines was warranted, the Trial Court, in its Memorandum Opinion, applied Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3), and considered the best interest of the Child and the circumstances of the parties. In light of Plaintiff's monthly expenses and the reduction in alimony from $5,000 per month to $2,000 per month starting in April 2000, the Trial Court held that Defendant's child support obligation should increase to $3,100 per month to afford the Child the same standard of living that he would have enjoyed had his parents not divorced.

As to the remaining $3,500, the Trial Court ordered that a Trust be established for the benefit of the Child to "be used for enhancing [the Child's] athletic skills, for extra amenities, for post-graduate education and for other opportunities to begin a lucrative career" until the Child turns age 25.[4] The Trial Court found that a trust fund restricted solely for education was not necessary in this instance because sufficient funds already were set aside for that purpose. Defendant was ordered to make monthly payments to the Trust in the amount of $3,500 until the Child turns age 18. The Trial Court further ordered that any funds remaining in the Trust when the Child turns age 25 would revert to Defendant.

In response to Defendant's contention that he was paying the amount set forth in the Guidelines' Chart, $1,440 per month in support plus private school tuition and other expenses, the Trial Court held that the MDA did not state clearly that it complied with the Guidelines. Accordingly, the Trial Court held that Defendant's obligation to pay tuition was a contractual agreement under the MDA, and that the tuition amount was not a child support obligation subject to modification.

After the Trial Court issued its Memorandum Opinion, Defendant filed a Motion to Recuse and to Strike or Otherwise Set Aside Memorandum Opinion and Order. As grounds for his motion, Defendant contended that the Trial Judge's role as a witness in other, non-related litigation ("other litigation") impacted the Trial Judge's decision in this matter. Defendant's attorney cross-examined the Trial Judge for a period of two days during the trial in the other litigation in May 2000. The Trial Judge rendered his decision in this matter five (5) days later, on May 10, 2000. Defendant further contends that since the trial in this case was concluded on March 3, 2000, he did

---

[3] Although not specifically provided in the Trial Court's Memorandum Opinion, the Trial Court apparently prorated the FCCAAP income for a period of 59 months, beginning in June 1995 and ending in April 2000.

[4] We refer to 21% of Defendant's net average monthly income and the amounts the Trial Court ordered for child support and the Trust in round numbers.

not anticipate that the Trial Judge's role as a witness in the other litigation would have any bearing on his decision. The Trial Judge did not recuse himself.

Plaintiff filed a post-trial Motion for Attorney's Fees and a Motion to Alter or Amend Final Judgment, while Defendant filed a Motion to Stay Enforcement of Judgment Pending Appeal. The Trial Court entered an Order addressing these Motions, awarding a portion of Plaintiff's attorneys' fees in the amount of $20,000; ordering that Defendant's increased child support obligation should not apply retroactively to the date that Plaintiff's Complaint to Modify was filed but would begin on April 15, 2000; and ordering that Defendant's obligations to pay $3,500 per month to the Trust and Plaintiff's attorneys' fees were stayed pending appeal.

Defendant appeals. Plaintiff raises additional issues. We affirm.

### Discussion

On appeal and although not stated exactly as such, Defendant contends that the Trial Court erred in increasing child support to 21% of Defendant's net income, establishing the Trust, and awarding attorneys' fees to Plaintiff. Defendant argues that the parties' MDA controls the amount of his child support obligation and precludes any modification of child support. Further, Defendant asserts that the Trial Court should have granted his motion to recuse. Defendant also contends that the Trial Court erred in finding that Plaintiff had not dissipated funds from the Child's custodial accounts and that Defendant lacked standing to raise this issue. Finally, Defendant argues that the Trial Court committed error on several evidentiary rulings.

Although not stated exactly as such, Plaintiff raises the following issues on appeal: 1) the Trial Court erred in its calculation of Defendant's net income for purposes of modifying child support; 2) the Trial Court erred in establishing the Trust and in ordering that a portion of the child support award be applied to the Trust, but if no error was committed in ordering the Trust, the corpus should not revert to Defendant; 3) the Trial Court erroneously failed to order the increase in child support to begin on the date Plaintiff's Complaint was filed in 1998; and 4) although the Trial Court correctly awarded attorneys' fees and expenses to Plaintiff, the Trial Court should have awarded all of the fees incurred by Plaintiff for the trial. Plaintiff also requests her attorneys' fees incurred on appeal.

With respect to the Trial Court's findings of fact, our review is *de novo* upon the record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. Rule App. P.13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). The Trial Court's conclusions of law are subject to *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

Although the parties raise numerous issues on appeal, the main question that must be resolved is whether the Trial Court correctly held that Defendant's child support obligation should

increase.  In Tennessee, child support is governed by statute, Tenn. Code Ann. § 36-5-101(a)(1), which provides as follows:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered. . . .

In discussing the application of the Guidelines, Tenn. Code Ann. § 36-5-101(e)(1), provides, in pertinent part, the following:

> the court shall apply as a rebuttable presumption the child support guidelines . . . .  If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties.  Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

*See also* Tenn. Comp. R. & Regs., ch. 1240-2-4-.01 (2)-(3); ch. 1240-2-4-.02(7).

The Guidelines set the "minimum base" of a child support obligation which is a "flat percentage of the obligor's net income . . . depending on the number of children . . . ."  Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(5) & .03(2); *Barnett v. Barnett*, 27 S.W.3d 904, 906-7 (Tenn. 2000). Defendant's child support obligation under the Guidelines is 21% of his net income since one child is involved.  Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(5).  The income of Plaintiff, as the custodial parent, "should not be considered in the calculation of or as a reason for deviation from the [G]uidelines in determining the support award amount . . .," but the Guidelines presume that "at least an equal percentage of [the obligee's] net income" is used for the support of the child.  Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(2); *see also Barnett v. Barnett*, 27 S.W.3d at 907.

Since the determination of the obligor parent's income is "the most important element of proof" when setting or modifying child support, we first will examine the Trial Court's finding regarding Defendant's income. *Turner v. Turner*, 919 S.W.2d 340, 344 (Tenn. Ct. App. 1995). The Guidelines give a broad definition of gross income, which is in pertinent part, as follows:

> all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following:  wages, salaries, commissions, bonuses . . . .

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a). Moreover, the Guidelines direct that "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., should be averaged and added to the obligor's fixed salary." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(b).

As discussed, the Trial Court partially based its award of child support upon a pro-rata amount of income received by Defendant from his FCCAAP awards for the years 1998, 1999 and 2000. The Trial Court then averaged Defendant's net income for those three years to arrive at the figure upon which it based the child support award. Plaintiff contends that the Trial Court should not have used the pro-rata amount but instead, should have based the child support increase upon the entire amount of FCCAAP income received by Defendant. Defendant, on the other hand, contends that the FCCAAP income should not have been calculated into his income at all because he was awarded this income as an asset by the parties' MDA. Defendant points out that while the parties were negotiating the MDA in 1995, Plaintiff's CPA expert witness estimated Defendant's future FCCAAP income and was nearly 100% accurate in his predictions. Citing *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990), Defendant contends that the increase in his income due to the FCCAAP awards should not be a basis for an increase in child support since it was not unanticipated or unforeseen and therefore, not a material and substantial change in circumstances.

We hold that the Trial Court did not err in using a pro-rata share of Defendant's FCCAAP income and Defendant's average net income for 1998-2000 as the bases for increasing Defendant's child support obligation. As discussed, the Guidelines provide a broad definition of income that includes "income from any source . . . [including] commissions, bonuses . . . ." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a). From the proof contained in the record, it appears that the FCCAAP is a deferred compensation program and that the FCCAAP money received by Defendant shows as income on his W-2 in the year that it is received.

Additionally, despite Defendant's argument, the correct inquiry in a child support modification matter is not whether there is a material change of circumstances but whether there is a "significant variance" between the current obligation and the obligation set by the Guidelines. *Turner v. Turner*, 919 S.W.2d at 343 (citing Tenn. Code Ann. § 36-5-101(a)(1)). Moreover, although Defendant correctly points out that the parties negotiated and agreed to the MDA which awarded the FCCAAP to Defendant, "as a general rule, a custodial parent may not waive her minor child's right of support." *Norton v. Norton*, No. W1999-02176-COA-R3-CV, 2000 WL 52819, at * 4 (Tenn. Ct. App. Jan. 10, 2000) (citations omitted).[5] While this fight is between Plaintiff and Defendant, what must be remembered is that the Child is the ultimate beneficiary of the child support payments made by Defendant. *See Rutledge v. Barrett*, 802 S.W. 2d 604, 607 (Tenn. 1991).

---

[5] We recognize the potential for bad-faith negotiations although there is no indication in the record on appeal that it occurred in this case. Plaintiff may have received another asset in exchange for Defendant's keeping his entire FCCAAP income, but as discussed, a minor child's right to child support may not be waived by a parent during negotiations of a MDA. *See Norton v. Norton*, 2000 WL 52819, at * 4.

Additionally, we reject Plaintiff's argument that the Trial Court erred in prorating Defendant's FCCAAP income and averaging his net income instead of basing the child support award on the entire amount of FCCAAP income received by Defendant during each year. The Guidelines direct that "[v]ariable income such as commissions, bonuses . . . should be averaged and added to the obligor's fixed salary." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03 (3)(b); *see also Alexander v. Alexander*, 34 S.W.3d 456, 460 (Tenn. Ct. App. 2000) (applying the Guidelines' directive to average the obligor's income over a four-year period). Moreover, Tenn. Code Ann. § 36-5-101(a)(2)(A), provides that courts are to "[fix] some definite amount . . ." when setting child support. This Court has held that "'a definite obligation provides a predictable amount of support for the dependent children and enables the [obligor] to plan to pay a known amount each month.'" *Stacey v. Stacey*, No. 02A01-9802-CV-00050, 1999 WL 1097975, at * 5 (Tenn. Ct. App. Oct. 6, 1999) (citations omitted). The proof in the record shows that the FCCAAP income varied by approximately 50% between the years 1998 and 1999. Additionally, although the CPA accurately estimated Defendant's FCCAAP earnings, the value of the FCCAAP award is based on the market value on the date Defendant becomes 100% vested. Accordingly, we hold that the Trial Court did not err in its calculation of Defendant's net income.

We next review the Trial Court's determination that a significant variance exists between the Guidelines and Defendant's child support obligation under the MDA. *See* Tenn. Code Ann. § 36-5-101(a)(1). The Guidelines provide that "a significant variance shall be at least 15% if the current support is . . . [$100.00] or greater per month . . . ." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3). Clearly, a significant variance existed in this matter since Defendant's child support obligation under the MDA was $1,440 per month, while the Guidelines' amount totals approximately $6,600. *See id.*

Our next inquiry concerns Defendant's argument that the Trial Court erred in finding that the child support obligation should be modified to match the Guidelines' flat percentage amount. Defendant contends that the Child's needs were being met by the child support set by the MDA and that Plaintiff is seeking to off-set her reduction in alimony through an increase in child support.

The Guidelines contemplate a possible downward deviation from the flat percentage amount where the obligor's net monthly income exceeds $10,000, providing as follows:

> The court must order child support based upon the appropriate percentage to the custodial parent up to a net $10,000 per month of the obligor's income. When the net income of the obligor exceeds $10,000 per month, the court may consider a downward deviation from the guidelines if the obligor demonstrates that the percentage applied to the excess of the net income above $10,000 a month exceeds a reasonable amount of child support based upon the best interest of the child and the circumstances of the parties. The court may require that sums paid above the percentage applied to the net

> income above $10,000 be placed in an educational or other trust fund
> for the benefit of the child.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3).

Based upon the facts and circumstances presented by the record on appeal, we find no error in the Trial Court's application of the Guidelines' flat percentage amount. Although we realize that our review of the Trial Court's conclusions of law is *de novo* with no presumption of correctness, we also recognize that the Trial Court has some limited discretion in determining the amount of child support where the obligor's income exceeds $10,000 per month. *Ganzevoort v. Russell*, 949 S.W.2d at 296; *Smith v. Smith*, 984 S.W.2d 606, 609 (Tenn. Ct. App. 1997) (citing *Jones v. Jones*, 930 S.W.2d 541, 544 (Tenn. 1996)); Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3). This limited discretion arises from the fact that the presumption that the Guidelines apply is *rebuttable. Jones v. Jones*, 930 S.W.2d at 544.

The Trial Court found that Defendant, as the obligor, did not carry his burden of showing that 21% exceeded a reasonable amount of child support. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3). Defendant's net average monthly income is approximately $31,620, an amount which certainly places Defendant within the income bracket contemplated by Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3), for a possible downward deviation. The Trial Court found that with the MDA's child support obligation, Defendant has nearly $23,000 per month in net income after expenses, while Plaintiff, the custodial parent, sustains a monthly deficit after expenses. On appeal, Defendant contends that Plaintiff's testimony regarding her expenses was not credible. The Trial Court's determinations regarding credibility, however, are accorded deference by this Court. *See Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). The proof in the record on appeal does not preponderate against the Trial Court's finding regarding this matter, and, accordingly, Defendant's position is not well-taken. *See* Tenn. Rule App. P.13(d); *Alexander v. Inman,* 974 S.W.2d at 692.

We do not disagree with Defendant that the proof in the record establishes that the Child's needs are being met, and we observe that the Child has many amenities that other children do not have. We agree, however, with the Trial Court that in order to ensure the Child the same standard of living that he would have enjoyed had his parents not divorced, Defendant's child support obligation needs to be increased. This finding is supported by the Guidelines' goal "[t]o ensure that . . . the economic impact on the child(ren) is minimized and to the extent that either parent enjoys a higher standard of living, the child(ren) share(s) in that higher standard." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(2)(e). Moreover, while Defendant's child support payment will go "directly or indirectly, to the custodial parent . . . the purpose of the payment is to fulfill the non-custodial parent's obligation to contribute to the *child's* support." *Rutledge v. Barrett*, 802 S.W.2d at 607 (alterations in original). Accordingly, we affirm the Trial Court's finding that there should be no downward deviation from the Guidelines' flat percentage amount of child support.

We also affirm the Trial Court's decision to split the Guidelines' obligation of 21% between child support payments in the amount of $3,100 and payments to the Trust in the amount of $3,500. Both parties have raised issues on appeal regarding the Trial Court's establishment of the Trust. Plaintiff contends that the entire 21% should be paid as child support, while Defendant essentially argues that the establishment of the Trust for non-educational purposes shows that 21% of his net monthly income exceeds a reasonable amount of child support. We agree that the duration and the purpose of the Trust is atypical but also find that there is no prohibition against this type of Trust. When the obligor has a net monthly income in excess of $10,000, as Defendant does, the Guidelines allow funds to be placed "in an educational or *other trust fund* for the benefit of the child." Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(3) (emphasis added). In addition, our Supreme Court, in applying the Guidelines, held that "[a]lthough child support payments may not extend beyond the child's minority . . ., the benefits from such payments can." *Nash v. Mulle*, 846 S.W.2d 803, 806 (Tenn. 1993).

Further, we reject Plaintiff's argument that the Trial Court erred in ordering that any remaining funds in the Trust revert to Defendant. This Court has held that any remaining funds in an educational trust should revert to the parent who funded the trust, and we find no valid basis to distinguish this rule in its application to this Trust. *Price v. Price*, No. M1998-00840-COA-R3-CV, 2000 WL 192569, at * 9 (Tenn. Ct. App. Feb. 18, 2000).

Defendant, nevertheless, insists that his child support obligation cannot be modified because the parties agreed to the amount of child support payments in the MDA. Defendant contends that the MDA controls his child support obligation in spite of his post-MDA increases in income. The MDA provides that Defendant "shall pay . . . for the support and maintenance of the Child the sum of $1,440.00 per month and the cost of tuition . . . ." The proof in the record on appeal shows that the cost of tuition for the Child's private school is $578 per month, and Defendant argues that his entire child support obligation included the tuition payments for a total of $2,018 per month. Defendant argues that since his net income at the time the MDA was negotiated was nearly $15,000 per month, the parties negotiated a downward deviation from the Guidelines since 21% of that figure is approximately $3,100. Defendant further contends that since the MDA complies with the statutory language of Tenn. Code Ann. § 36-5-101(h), the MDA should be upheld.

The MDA does not control Defendant's current child support obligation because, as discussed, a significant variance exists. *See* Tenn. Code Ann. § 36-5-101(a)(1). We also agree with the Trial Court's determination that the MDA does not comply with the statutory language of Tenn. Code Ann. § 36-5-101(h), and "does not effectively deviate from the Guidelines . . . ." *Dwight v. Dwight*, 936 S.W.2d 945, 948 (Tenn. Ct. App. 1996). More importantly, even though there was a downward deviation, neither the MDA nor the accompanying final decree provides "that the application of [the Guidelines] would be unjust or inappropriate . . ., in order to provide for the best interest of the [Child] or the equity between the parties [. . .]," and "the amount of support that would have been ordered under the [Guidelines] and a justification for the variance . . . ." Tenn.

Code Ann. § 36-5-101(e)(1); *see also* Tenn. Comp. R. & Regs., ch. 1240-2-4-.01(3).[6] Therefore, we hold that in light of the significant variance and the MDA's statutory non-compliance, the MDA does not bar a modification of Defendant's child support obligation.

In addition, we reject Defendant's argument that his child support obligation includes private school tuition payments. This Court has specifically held that school tuition expenses do not constitute child support under the Guidelines since the Guidelines contemplate "'[e]xtraordinary educational expenses'" as justification for adding to the flat percentage child support obligation. *Dwight v. Dwight*, 936 S.W.2d at 950 (quoting Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(1)(c)).

Our next inquiry concerns when the increase in child support should begin. Plaintiff contends that the Trial Court erred in failing to order the increased child support to begin retroactively on the date in 1998 that she filed the Complaint to Modify. This Court has recognized that in child support modification cases, the "trial court has the discretion to order the modification effective as of the date of the modification petition, the date of the final hearing, or any appropriate date in between." *Bjork v. Bjork*, No. 01A01-9702-CV-00087, 1997 WL 653917, at * 8 (Tenn. Ct. App. Oct. 22, 1997) (citations omitted). We hold that the Trial Court's decision that the modification in child support be effective beginning on April 15, 2000, instead of the date that the Complaint was filed, was not an abuse of discretion. Accordingly, we affirm the Trial Court's decision to apply the modification in child support beginning on April 15, 2000.

Our review now turns to Defendant's claim that Plaintiff was dissipating funds from the Child's custodial accounts. Defendant contends that the Trial Court erroneously found that Defendant lacked standing to assert this claim and that the claim was not supported by the facts of the case. In his brief, Defendant does not cite to any controlling authority to support his contention that he has standing to assert such a claim, and we have we been unable to locate any such authority. More importantly, the evidence does not preponderate against the Trial Court's findings of fact dispositive of this claim by Defendant. Therefore, whether or not Defendant has standing to raise this issue is immaterial as he loses on these facts. Defendant's argument as to this issue is without merit.

Defendant further contends that the Trial Court committed error regarding three evidentiary rulings: 1) by admitting into evidence two of Plaintiff's income and expense statements for the year 2000 ("Income and Expense Statements"); 2) by allowing Plaintiff and her former attorney to testify regarding matters which they claimed during their depositions were protected by attorney-client privilege; and 3) by allowing the introduction of an exhibit ("Exhibit 70") created by Plaintiff's CPA expert witness.

---

[6] The version of this particular statute, Tenn. Code Ann. § 36-5-101(e)(1), that was in effect when the MDA was incorporated into the final decree in 1995 has not been amended since.

Whether evidence is admissible is a question within the trial court's discretion. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 702 (Tenn. Ct. App. 1999). Our Supreme Court has held:

> When arriving at a determination to admit or exclude even that evidence which is considered relevant trial courts are generally accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion.

*Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d at 442.

From our review of the record, and in light of the wide latitude given the Trial Court's determination to admit or exclude evidence, Defendant has failed to show an abuse of discretion by the Trial Court. Therefore, we find no reversible error by the Trial Court in its evidentiary rulings.

Defendant also contends that the Trial Court erred in not granting his motion to recuse, a motion not filed until after the Trial Court issued its Memorandum Opinion. Defendant contends that the proximity of the Trial Judge's testimony in the other litigation and the date of the issuance of the Memorandum Opinion in this matter gives rise to the appearance of impropriety. Defendant, however, failed to file his Motion to Recuse until *after* the Trial Court issued the Memorandum Opinion. This Court has held that motions to recuse "must be filed promptly after the facts forming the basis for the motion become known . . . and the failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality." *Davis v. State Dept. of Employment Sec.*, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999) (citations omitted). This Court in *Davis* was faced with a similar set of facts where the plaintiff filed a petition to rehear after receiving an opinion from this Court authored by Judge Koch. *Id.* at 312. In his petition, the plaintiff in *Davis* contended that Judge Koch was not impartial because of his involvement as a named defendant in another lawsuit stemming from his position as Tennessee's Commissioner of Personnel. *Id.* In finding that the plaintiff failed to raise his objection timely to Judge Koch's participation on the panel, this Court held:

> Tenn. R. App. P. 36(a) provides that parties who are responsible for an error or who fail to take reasonably available steps to prevent an error, are not entitled to appellate relief based on the error. As other courts reviewing similar circumstances have held: "One cannot know of [allegedly] improper judicial conduct, gamble on a favorable result by remaining silent as to that conduct, and then complain that he or she guessed wrong and does not like the outcome."

*Id.* at 313 (quoting *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591, 610 (1998) (alteration in original)).

In this matter, Defendant and his attorney knew, prior to the trial in this case, that the Trial Judge likely would be a witness in the other litigation where Defendant's attorney would possibly cross-examine him. Prior to trial, and certainly prior to the Trial Court's issuance of its Memorandum Opinion, Defendant easily could have filed a motion to recuse but instead waited until after the Trial Court's decision was issued. As in *Davis*, a permissible conclusion to be drawn is that Defendant and his attorney "purposely decided to use the impartiality issue as their 'ace-in-the-hole' in the event that they lost . . . ." *Id.* Accordingly, we hold that Defendant failed to raise timely questions regarding the Trial Judge's impartiality and therefore, waived this issue. *See id.*

Finally, both parties raise issues on appeal regarding the Trial Court's grant of attorneys' fees and expenses in the amount of $20,0000 to Plaintiff. Defendant contends that the Trial Court should not have awarded any attorneys' fees to Plaintiff. On the other hand, Plaintiff argues that the Trial Court did not award an amount sufficient to cover all of her attorneys' fees and expenses which total $36,466 at the trial level.

In child support modification cases, Tenn. Code Ann. § 36-5-103(c), gives trial courts the power to award "reasonable attorney fees . . . ." The award of attorneys' fees is within the trial court's discretion. *Richardson v. Richardson*, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997). Unless it "'affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining,'" the trial court's exercise of discretion will not be reversed on appeal. *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn. 1999). We find no abuse of discretion by the Trial Court with respect to this issue.

In disputing the award of attorneys' fees to Plaintiff, Defendant points out that Plaintiff did not request attorneys' fees in her pleadings until she filed a post-trial Motion to Alter or Amend Final Judgment.[7] In child support cases, a party's failure to include a prayer for attorneys' fees in his complaint is not fatal to such a request. *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989). Our Supreme Court has recognized that a child's right to support and maintenance is "'inseparable'" from his right to reasonable attorneys' fees. *Id.* (quoting *Graham v. Graham*, 140 Tenn. 328, 204 S.W. 987, 989 (1918)).

Plaintiff has incurred further attorneys' fees because Defendant appealed the Trial Court's decision increasing the amount of child support. This Court has recognized that "[t]he allowance of attorney's fees for [an appeal] is for the benefit of the child, and the custodial spouse should not have to bear the expense incurred on the child's behalf." *Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993) (citations omitted). Accordingly, we grant Plaintiff her reasonable attorneys' fees incurred on appeal. On remand, the Trial Court shall determine the amount of Plaintiff's reasonable attorneys' fees incurred in this appeal.

---

[7] Plaintiff, however, in her Reply to Counterclaim, did request attorneys' fees incurred in defending against the Counterclaim.

## Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed equally against the Appellant, William Sidney Huntley, and his surety, and the Appellee, Kristin B. Huntley.

_____

D. MICHAEL SWINEY, JUDGE