IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 21, 2003 Session

## FRANK HOOPER LACEY v. KARLA SUZANNE LACEY

**An Appeal from the Chancery Court for McNairy County**
**No. 7619     Dewey C. Whitenton, Chancellor**

---

**No. W2002-02813-COA-R3-CV - Filed October 31, 2003**

---

This case involves the modification of child support. The mother and father were divorced, and custody of the parties' two children was awarded to the father. In the divorce decree, the mother was ordered to pay child support based on her salary as a park recreation director. A month later, the mother lost her job. After she lost her job, the mother enrolled in a doctorate program at a nearby college that agreed to waive her tuition. While in the doctorate program, the mother planned to work as a teacher's assistant at the college earning a much reduced income. Shortly thereafter, the mother filed a petition to modify her child support obligation. The father objected. After a hearing, the trial court reduced the mother's child support obligation. The father now appeals. We affirm, finding that the mother was not willfully underemployed, and that the tuition waived by the college should not be imputed to her as income.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Charles M. Cary, Bolivar, Tennessee, for the appellant, Frank Hooper Lacey.

Karla Suzanne Lacey, appellee, *pro se*.

### OPINION

Plaintiff/Appellant Frank Hooper Lacey ("Father") and Defendant/Appellee Karla Suzanne Lacey ("Mother") were divorced by a final decree entered on May 7, 2002. Two children were born of the marriage, Sarah Adeline Lacey (born May 28, 1990), and Walker Bailey Lacey (born May 1, 1992). In the divorce decree, primary custody of the children was awarded to Father. Mother was ordered to pay child support in the amount of $744.67 per month, and to provide medical insurance for the children or pay $160 per month to Father as reimbursement for the cost of such insurance.

At the time the divorce decree was entered, Mother was employed by the City of Brownsville as the Parks and Recreation Director. By letter dated June 13, 2002, Mother resigned from this position. Shortly thereafter, Mother enrolled as a full-time doctoral student at the University of Mississippi, and was scheduled to begin in August 2002. She also agreed to be a teacher's assistant, earning $853 per month. Mother's $20,000 annual tuition was waived by the University.

On July 19, 2002, Mother filed a petition to modify child support, in which she alleged that the change in her employment situation warranted a reduction in child support. Father objected, asserting that Mother was voluntarily underemployed, and that the change in her circumstances was foreseen at the time the divorce decree was entered. On August 15, 2002, the trial court entered an order finding preliminarily that Mother had not shown an unforeseeable change in circumstances, but granting Mother leave to present additional evidence that the change in her circumstances was not foreseeable, and that she was not voluntarily underemployed.

A hearing was held on October 21, 2002. Mother presented the testimony of Pamela Dement Russell ("Russell"), a Haywood County Commissioner and a member of the Haywood County Conservation Board ("the board"), which oversees the park and recreation operations. Russell testified that, at the June 2002 meeting of the board, the board members told Mother that they were dissatisfied with her job performance and that she had to resign or be terminated. The resignation letter that Mother signed on June 13, 2002 had been prepared by Russell in advance of the meeting in anticipation that Mother would choose to resign rather than be terminated. Russell stated that, when Mother was told that her job performance was unsatisfactory and that she would have to resign or be terminated, she "acted like she was very surprised."

Mother testified at the hearing as well. She said that she had applied for the graduate program at the University of Mississippi two years prior and was accepted, but turned it down at that time. She testified that, as a graduate student, she would be teaching two classes and taking three. Mother said that for nine months her salary would be $853 per month, and that her $20,000 tuition would be waived. She characterized this as "an investment in my future."

At the conclusion of the hearing, the trial court made an oral ruling granting Mother's petition, reducing the child support to $240 per month, based on her salary of $853 per month. On October 28, 2002, the trial court entered a written order to this effect. From that order, Father now appeals.

On appeal, the trial court's findings of fact are reviewed *de novo* on the record, with a presumption that those findings are correct, unless the evidence preponderates otherwise. ***Huntley v. Huntley***, 61 S.W.3d 329, 334 (Tenn. Ct. App. 2001). The trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. ***Id.***

On appeal, Father raises several issues. First, he argues that the trial court erred in finding that there had been a change in circumstances since the entry of the final decree of divorce sufficient to justify a reduction in child support. Second, he contends that the trial court erred in finding that

Mother was not voluntarily underemployed. In the alternative, Father argues that, even if the court considers a modification in child support, the $20,000 tuition waiver should have been included as part of Mother's income as "in kind" remuneration for purposes of calculating her child support obligation.

To determine whether an existing child support order should be modified, the "significant variance test" is applied. This is set forth in Tennessee Code Annotated § 36-5-101(a)(1), which provides in pertinent part:

> In cases involving child support, upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed.

Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2002); *see Turner v. Turner*, 919 S.W.2d 340, 343 (Tenn. Ct. App. 1995). According to the applicable regulations, "[f]or purposes of defining a significant variance between the guideline amount and the current support order pursuant to TCA § 36-5-101, a significant variance shall be at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(3). "Thus, the substantial and material change of circumstances test is not the appropriate test, although a request for modification of child support is generally triggered by a change of circumstances." *Coates v. Coates*, No. M2001-01928-COA-R3-CV, 2002 WL 31528512, at *2 (Tenn. Ct. App. Nov. 15, 2002).

Father argues that the change in Mother's circumstances was foreseeable at the time of the divorce decree, because Mother had, in fact, applied for the graduate position two years prior. Therefore, he maintains, Mother must have known in May 2002, when the divorce decree was entered, that she would ultimately choose to enroll. The evidence, however, is to the contrary. The uncontradicted evidence at the October 21, 2002 hearing showed that Mother was surprised to find herself forced to resign from her job as the Haywood County Parks and Recreation Director, and that she took the graduate teaching position after she found herself unemployed.

Father argues that the undisputed evidence shows that Mother is voluntarily underemployed. Father notes that Mother has a master's degree and has the potential to earn in excess of $35,000 per year. He asserts that someone with Mother's credentials should not be permitted to voluntarily choose a job that earns less than minimum wage in order to further her own education, because providing for the children should be her first priority. Since Mother voluntarily resigned from her position with the park system, Father contends, her child support obligation should be based on that salary.

"Whether a party is willfully and voluntarily underemployed is a fact question, and the trial court has considerable discretion in its determination." ***Willis v. Willis***, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). The burden is on the custodial parent to show that the obligor parent is willfully and voluntarily underemployed. ***Eatherly v. Eatherly***, No. M2000-00886-COA-R3-CV, 2001 WL 468665, at *11 (Tenn. Ct. App. May 4, 2001). "As with any other finding, a finding of underemployment must be supported by evidence in the record." ***Id.*** The trial court must consider the past and present employment and determine whether the decision to take the lower paying job was made in good faith. ***Willis***, 62 S.W.3d at 738. When a party voluntarily leaves his employment to accept a lower paying position, "courts are inclined to find willful and voluntary underemployment." ***Id.*** An admission that a party has the ability to earn a greater income is evidence of willful underemployment. ***Id.*** At the crux of the analysis, however, is the parent obligor's reason for accepting the lower paying position. ***Eatherly***, 2001 WL 468665, at *11. Therefore, we must scrutinize the reasons for Mother's ultimate career choice to determine whether it was reasonable and made in good faith. ***See Wix v. Wix***, No. M2000-00230-COA-R3-CV, 2001 WL 219700, at *13 (Tenn. Ct. App. Mar. 7, 2001).

In this case, prior to losing her job, Mother had planned to continue pursuing her doctorate degree on a non-resident basis. This changed after the loss of her job, which was demonstrated by undisputed evidence to be involuntary and unforeseen. As "an investment in [her] future," Mother decided at that point to enroll full-time in the doctorate program at the University of Mississippi and take a temporary teaching position, with the expectation of completing her degree by December 2004, in order to ultimately improve her earning capacity. Considering all of this, the trial court found that Mother was not willfully and voluntarily underemployed. Upon review of the record, we do not find that the evidence preponderates against the trial court's factual finding on this issue.

Finally, Father argues that the trial court erred in declining to impute as income to Mother the $20,000 annual tuition waived by the university. In support, he notes that the child support guidelines contain a broad definition of "gross income:"

(3) Gross income.

(a) Gross income shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment. . . .

> *"In kind" remuneration* must also be imputed as income, i.e., fringe benefits such as a company car, the value of on-base lodging and means in lieu of BAQ and BAS for a military member, etc.

Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a) (emphasis added); *see Huntley*, 61 S.W.3d at 335. In addition, "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., should be averaged and added to the obligor's fixed salary." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(b); *see Huntley*, 61 S.W.3d at 335.

Father argues that the $20,000 annual tuition was waived in exchange for Mother's participation in the teaching program, and therefore is "in kind" remuneration and should be included as income to her. If the tuition is included in Mother's income, her income would be deemed at a level at which there would not be a 15% variance "between the guidelines about and the support currently ordered so as to justify a modification in child support.[1] *See* Tenn. Code Ann. § 36-5-101(a)(1) (2001). In response, Mother argues that the tuition waiver she received is more in the nature of an academic scholarship than a stipend for work performed, and it has no independent value that would allow her to utilize it to support herself or to help meet her financial obligations. Therefore, she argues, it should not be included as part of her gross income for purposes of determining her child support payments.

As set forth above, "in-kind" remuneration is imputed as income for purposes of calculating the gross income on which an obligor parents's child support obligation is based. Such "in kind" remuneration includes "fringe benefits such as a company car, the value of on-base lodging and means in lieu of BAQ and BAS for a military member, etc." Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(a). The mere fact that an obligor has received a benefit is not, in itself, enough to qualify the benefit as "in kind" remuneration. *See State v. Partridge*, No. E1999-02779-COA-R3-CV, 2000 WL 1877492, at *2 (Tenn. Ct. App. Dec. 27, 2000). There must be evidence that the benefits "amount to a payment for services rendered." *Id.* In this case, the waiver of Mother's tuition by the university was a benefit that could not be used to pay for Mother's living expenses. Under these circumstances, the benefit was more akin to a scholarship to Mother in her capacity as a student, rather than a stipend for her work performed as a teacher's assistant. Therefore, because the waiver of tuition would not constitute a "fringe benefit" or a payment for services rendered, it cannot be characterized as "in kind" remuneration and is not included in Mother's income for purposes of determining Mother's child support obligation. Under these circumstances, we cannot conclude that the trial court erred in finding Mother's income to be $853 per month, and in setting her child support obligation at $240 per month.

---

[1]Father argues that, when the $20,000 annual tuition is imputed to Mother as income, one twelfth of that amount ($1,666.67) per month should be added to the $853 per month that she actually receives as income. Under that scenario, Father argues, Mother's total monthly compensation would be $2,519.67. Child support for two children based on that income would be $654.11 per month under the guidelines. Because the variance between the current support award, $744.67, and the guideline amount based on Mother's income would be 12.16%, which is less than 15%, then Mother would not be eligible for a reduction in child support according to the regulations.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to the Appellant, Frank Hooper Lacey, and his surety, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE