IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 8, 2016 Session

## GRETCHEN MICHELE BENEDICT v. DONALD LESTER BENEDICT, JR.

**Appeal from the Chancery Court for Hamilton County**
**No. 99-0673      Pamela A. Fleenor, Chancellor**

_____

**No. E2015-01427-COA-R3-CV-FILED-MAY 25, 2016**

_____

This is the second time this matter has been before us on appeal. The issue is again the correct amount of Donald Lester Benedict, Jr.'s (Father) income upon which child support is to be based. Gretchen Michele Benedict (Mother) argues that the trial court erred when it set Father's child support based upon an incorrect income figure. We have determined that the trial court misinterpreted our previous opinion in ***Benedict v. Benedict***, No. E2013-00978-COA-R3-CV, 2014 WL 2187779 (Tenn. Ct. App., filed May 27, 2014) (***Benedict I***). The trial court incorrectly held that Father's income was $75,000 per year for the purpose of setting child support for the period February 2007 to May 2014. The trial court used the $75,000 annual figure even though the evidence showed that Father's actual income during the period of 2010-2014 ranged from a low of $60,444 to a high of $199,530. We vacate the trial court's judgment and remand for a recalculation of the amount of child support.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated; Case Remanded for Further Proceedings**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Grace E. Daniell, Chattanooga, Tennessee, for appellant, Gretchen Michele Benedict.

Phillip C. Lawrence, Chattanooga, Tennessee, for appellee, Donald Lester Benedict, Jr.

**I.**

The parties have two children, a daughter born on January 11, 1996, and a son born on September 3, 1998. The parties were divorced on September 6, 2000. Pursuant to their marital dissolution agreement, Father was ordered to pay child support in the

amount of $3,200 per month. Our ***Benedict I*** opinion provides the following pertinent procedural history:

> In January 2007, Husband filed a petition to modify child support. Husband alleged that his income had decreased substantially and that Wife now was working. Wife filed an answer and counterclaim alleging that Husband had unclean hands and had failed to pay child support and alimony as ordered. Wife acknowledged that the parties had resumed living together for a while and that she was working. In November 2007, the Trial Court cut Husband's child support obligation from $3,200 per month to $1,900 per month pending trial. For his part, Husband denied being behind on child support or alimony. In May 2008, Wife filed a petition for contempt alleging that Husband failed to pay fees for one of the Children to attend school. Husband filed a response, alleging a reduction in income and asking for removal of his responsibility to pay tuition.

> In April 2009, the Trial Court entered an order referring numerous issues in the case to a Master. The Master heard the case on several dates in 2010. . . . Husband's income in 2000 was $350,000 per year. Husband at that time worked for Adams Lithography. Husband's work was commission-based. In 2002, Husband lost his job at Adams when the major client left Adams. Between 2002 and 2009, Husband worked in a variety of jobs. Husband opened Five–0–5 Marketing, LLC, an advertising agency, and Fireball Business Services, a printing company. The businesses ultimately did not thrive. Husband's income was as follows: 2005–$102,943, 2006–$205,143, 2007–$2,188, 2008–$24,954. By 2009, Husband returned to Adams and earned $75,000 per year. As of 2009, Wife was earning around $17,000 per year.

> In March 2011, the Master entered his order. Husband's child support was set at $1,259 per [month] based on his salary at Adams of $75,000 per year. The Master ruled that Husband's obligation for private school tuition, college tuition, the second mortgage, and lease payments and residuals on the Mercedes were discharged in bankruptcy.

In January 2013, the Trial Court entered its memorandum opinion and order resolving Wife's objections to the Master's findings. The Trial Court held that the Master erred in calculating Husband's income and that Husband was willfully or voluntarily underemployed. The Trial Court held, *inter alia*: 1) Husband's income was his actual $75,000 salary at Adams plus an imputed $144,362 for a total of $219,362[.]

2014 WL 2187779, at *1-2. The trial court set Father's child support at $2,405 per month, retroactive to February 2007. Father appealed. We reversed the trial court's finding of willful underemployment and remanded for recalculation of child support, stating:

The record reveals that Husband's earnings took a major hit over the course of the decade after his divorce. Husband went from earning $350,000 per year to $75,000 per year at Adams. In the interim, his different enterprises eventually floundered. The evidence in the record on appeal does not support a finding that Husband intentionally torpedoed his career prospects. Rather, it appears Husband has tried and failed to reestablish some measure of his previous lifestyle. Husband filed for bankruptcy a few years after the divorce, as well.

\*　　\*　　\*

In calculating Husband's income, the Trial Court added his salary of $75,000 to an imputed income of $144,362 to reach $219,362. We do not believe this is the correct way to go about determining Husband's income. As noted by Husband, he either is earning a salary of $75,000 or is an entrepreneur capable of earning $144,362, but not both at the same time. The Master found Husband's income for purposes of child support to be $75,000 per year. We believe the preponderance of the evidence supports the Master's finding, and the Trial Court erred in setting aside that finding by the Master. This of course does not settle once and for all time the issue of Husband's income. Husband perhaps will earn more money in the future. However, under the evidence in

3

the instant appeal, we find that Husband's income for child support purposes is $75,000 per year.

We hold that the Trial Court erred in finding that Husband was willfully or voluntarily underemployed. Because of the close nexus between this issue and Husband's next two issues (whether the Trial Court erred in its modification of Husband's child support and award of child support arrearage; and, whether the Trial Court erred in finding that Husband was not entitled to a modification of his obligation to pay for private school tuition and an arrearage for private school tuition), those issues are pretermitted as they are to be considered anew by the Trial Court on remand in proceedings as necessary consistent with this Opinion.

*Id.* at *6-7.

Following our remand, the trial court heard evidence pertaining to Father's income for the years 2010 through 2014. In its memorandum opinion and order entered on July 2, 2015, the trial court found that Father's actual gross income was as follows: 2010–$60,444; 2011–$67,382; 2012–$140,141; 2013–$199,530; and 2014–$186,501. The trial court held, however, that "the law of the case" as established by **Benedict I** mandated a finding that Father's income for child support purposes was $75,000 per year. Based on this number, the trial court set Father's child support at $1,259 per month for the period between February 2007 and May 2014. Because Father had filed a second petition to modify child support on May 29, 2014, the court calculated Father's child support obligation beginning in June 2014 to be $1,435 based on the parties' respective incomes. The trial court held there was no arrearage because Father had overpaid by a total of $39,745.32 from February 2007 through May 2014, and granted Father a credit in that amount. The court further stated that "[b]ased on an annual income of $75,000 the Court finds that Mr. Benedict could not contribute toward private school tuition from 2007-2014 as such costs were not appropriate to his financial abilities during that time." Mother timely filed a notice of appeal.

## II.

Mother raises the following issues, as paraphrased from her brief:

1. Whether the trial court erred in calculating Father's child support obligation, arrearage, and/or credit owed, if any.

4

2. Whether the trial court erred in finding no arrearage owed by Father for the children's private school tuition, and determining that Father was not obligated to contribute toward tuition from 2007 to 2014.

3. Whether the trial court erred in finding that Father was not in contempt for failing to pay the children's private school tuition.

4. Whether the trial court should have granted Mother's request for attorney's fees.

**III.**

The primary and determinative question is whether the trial court correctly ruled that **Benedict I** mandated a finding that Father's income for child support calculation purposes from 2009 to 2014 was $75,000. In **Benedict I**, we held that the Master had correctly determined that Father's income for child support purposes was $75,000 *through 2009*, which was the last year about which the Master heard proof. As Mother points out, though, we were also careful to state that "[*t*]*his of course does not settle once and for all time the issue of Husband's income. Husband perhaps will earn more money in the future*." (Emphasis added). In our first opinion in this case, we never said that the trial court, on the first remand, had to use the $75,000 figure in calculating child support for the period of 2009 to 2014. On the contrary, we said just the opposite.

This Court was presented with a similar and analogous situation in **Smith v. Smith**, No. M2000-01094-COA-R3-CV, 2001 WL 459108 (Tenn. Ct. App., filed May 2, 2001). In **Smith**, we determined on the first appeal that the trial court had improperly applied the Child Support Guidelines and remanded for recalculation. **Id.** at *1. Then, "almost four years . . . passed between the original order setting child support and the hearing on remand." **Id.** at *2. On the second appeal, the mother argued that "the trial court should have used the father's actual income for the years 1996, 1997, 1998, in determining the father's obligation for those years." **Id.** at *3. The trial court, however, had taken a different approach:

> [T]he initial award was made at the time of divorce, in April 1996. However, that award was determined by this court to have been incorrectly calculated. On remand, the trial court interpreted its duty to establish the support due at the time of

5

the divorce, based on the father's income at that time, even though four years had passed. The court, placing itself in the position it would have been in April 1996, determined the father's then-current income based on information which would have been available at that time, the father's income from 1992 through 1995, even though the father's actual 1996 income was known at the time of the hearing on remand. The court then determined the child support due in each of the intervening years on the basis of its estimate of the father's 1996 income, although information about the father's actual income for each of those years was available.

*Id.* at \*4. The ***Smith*** Court, observing that "[b]ecause child support is based on income, an award for future support, including a prospective modification, is necessarily based upon most recent actual income," further stated,

> For the years between the initial entry of the order obligating the father to pay child support until the order on remand, we can find no basis for ignoring actual income and establishing support on outdated projections of income. The amount of the father's obligation for past years should be determined using actual income figures.
>
> \*　　\*　　\*
>
> To the extent the father has paid amounts since the date of divorce which are substantially less than the amount he should have paid, he owes back child support. The way to determine the arrearage is to recalculate the correct amount for each of the years since the divorce decree and subtract the father's actual payments.
>
> \*　　\*　　\*
>
> In the case before us, the obligation to provide support has existed since the divorce, but the amount of the obligation has not been correctly set, and the amount of back support cannot be determined until that is done. The situation is similar enough to the cases involving calculation of back support in

6

late-discovered paternity cases for us to use those cases for additional guidance.

Therefore, we conclude that the amount of back child support owed by the father should have been calculated using his actual income for each of the years since the divorce, proof of which was available at the time of the remand hearing.

*Id.* at *7-9 (footnote omitted).

As we did in ***Smith***, we hold that the trial court should use the actual income numbers for Father and Mother, on a yearly basis, to determine what the child support obligation should be. In other words, the actual and correct income numbers should be inputted into the child support calculator for each of the years from 2007 through 2015, which will result in either a deficiency or overpayment for each year. Father's income for 2007 through 2009 is $75,000 for child support calculation purposes, as the established law of the case determined by ***Benedict I***. For the years 2010 to the date of the hearing on this remand, the trial court is directed to use actual income figures. Because the trial court decided the issues related to Father's payment of the children's tuition expenses based on an erroneous premise, *i.e.*, that his income was $75,000, it should reconsider those issues upon remand.

Regarding Mother's request for attorney's fees, Tenn. Code Ann. § 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, . . . in the discretion of such court.

In ***Brown v. Brown***, No. W2005-00811-COA-R3-CV, 2006 WL 784788, at *4 (Tenn. Ct. App., filed Mar. 29, 2006), we observed:

> There is no question that T.C.A. § 36-5-103(c) empowers the courts to award reasonable attorney's fees incurred by persons who are required to return to court to enforce a child support order. *See, e.g.,* ***Huntley v. Huntley***, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). In these situations, the attorney's

fees are allowed as a necessary and, consequently, the fees may be couched as additional child support. *See* W. Walton Garrett, *Tennessee Divorce, Alimony and Child Custody* (2002 ed.) § 29-9. The decision of whether to award attorney's fees in these cases falls within the trial court's discretion, **Aaron v. Aaron**, 909 S.W.2d 408, 411 (Tenn. 1995). Consequently, we review those decisions under the less stringent "abuse of discretion" standard of review. Accordingly, we will reverse a trial court's decision with regard to awarding attorney's fees in cases such as this only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.

In the present case, the trial court simply held that "[e]ach party [is] to bear its own attorney's fees for this action." Based on our review of the record, we find no abuse of discretion in this decision. In view of our decision in this case, it is abundantly clear that Mother's appeal was not frivolous. Accordingly, we decline to award Father attorney's fees for frivolous appeal.

## IV.

The judgment of the trial court is vacated, and the case is remanded for further action consistent with this opinion. Costs on appeal are assessed to the appellee, Donald Lester Benedict, Jr.

_____
CHARLES D. SUSANO, JR., JUDGE