# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 12, 2010 Session

## IN RE JACK H. L. B-K.

### Appeal from the Juvenile Court for Williamson County
### No. 29708    Denise Andre, Judge

### No. M2010-00561-COA-R3-JV - Filed November 30, 2010

Father appeals the trial court's decision to allow Mother to relocate to California with the parties' minor child. Mother and Father lived separately in California when their only child was born. Mother moved with the minor child to Tennessee in April 2008; Father also moved to Tennessee to be near the child. A year later, Father filed a Petition to Register a Foreign Decree and Modify and Enforce Visitation in the Williamson County Juvenile Court. In June 2009, Mother notified Father she intended to return to California with their child and sought court permission to do so. When the juvenile court referee denied the relocation, Mother sought a de novo hearing before the juvenile court judge. Following a full hearing, the juvenile court judge granted Mother's request to relocate finding that Father, who did not have substantially equal parenting time, failed to carry his burden under the parental relocation statute, Tenn. Code Ann. § 36-6-108(d)(1). We affirm the trial court's findings that Father did not prove that Mother's move is not for a reasonable purpose, poses a specific or serious threat of harm to the child, or is vindictive. We also affirm the trial court's decision denying Mother's request for attorney's fees and deny her request for attorney's fees on appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Virginia Lee Story, Franklin, Tennessee, for the appellant, Timothy A. B.

Donna L. Green and Emily K. Moore, Brentwood, Tennessee, for the appellee, Trudi K.

# OPINION

The child was born May 4, 2006 to Mother and Father while both parties were residing in California. Mother and Father were dating at the time Mother became pregnant, but were no longer dating when the child was born. The California courts established Father's parentage and a parenting schedule. From July 2006 to September 2007, Father had supervised day-time visitation with the child. Pursuant to a September 2007 order, his visitation was to be re-evaluated around the time of the child's second birthday. In April 2008, by mutual agreement, Mother, the child, and Father all moved to the Nashville, Tennessee area to raise the child; Mother and Father continued to live separately. This mutual decision to move was based upon the opinion that the Middle Tennessee area was a better place for the child to grow up.

Upon moving to Nashville, Mother, whose career is in television production, was employed as an instructor at the CSB School of Broadcasting. Father, who was certified as an emergency medical technician in California, gained certification in Tennessee and became employed at an area hospital. Mother purchased a home in Franklin, Tennessee, and Father purchased a home in Nashville, Tennessee.

Pursuant to the California decree, Mother was the primary residential parent of the child, and Father had approximately 66 days of visitation per year with the child.

In March 2009, Mother's employer went bankrupt and closed and Mother began to look for employment. She eventually found employment in Nashville for $40,000 a year.

On May 21, 2009, Father filed a Petition to Register Foreign Decree and Modify and Enforce Visitation in the Juvenile Court of Williamson County. On June 24, 2009, Mother sent Father notice of her intent to relocate to California for employment reasons. In the letter, Mother informed Father that she had been offered a lucrative position with ABC Family as an editor and producer, where she would earn $100,000 a year. On July 7, 2009, Mother filed an answer to Father's petition and a motion to dismiss Father's petition.

Following a hearing before the juvenile court referee on Father's petition, the referee granted Father's petition to register the foreign decree and denied Mother's motion to dismiss. An order granting Father's request for additional visitation was subsequently granted.

In the interim, on July 16, 2009, Father filed an objection to Mother's notice to relocate. On August 14, 2009, Mother filed a response to Father's objection in which she requested the court's permission to relocate. Following a hearing on Mother's request to

relocate to California, the juvenile court referee denied Mother's request upon the finding that the requested move was not for a reasonable purpose and was not in the child's best interest. The referee also adopted a new parenting plan in which Father's visitation was increased from 66 days to 165 days per year. Dissatisfied with the referee's rulings, Mother requested a hearing before the juvenile court judge, which was granted.

A de novo hearing was held before the juvenile court judge on February 1, 2010, during which Mother presented evidence of a new job opportunity in California in her professional field in which she would make $100,000 annually.[1] The head of the company that was to employ Mother testified via deposition about the position. Mother testified that this job offered not only a higher salary than her current position but also the opportunity for more career advancement and promotion. Mother testified that she planned to live in the Agoura, California area. By order entered on February 24, 2009, the juvenile court judge granted Mother's request to relocate to California. The court found that Father had failed to meet his burden of proof under the parental relocation statute, Tenn. Code Ann. § 36-6-108(d), because Father failed to show that Mother's move was not for a reasonable purpose, would pose a specific threat of harm to the child, or was vindictive.

On March 23, 2010, the court entered an amended order adopting the parenting schedule proposed by Mother. Per the new schedule, Father would receive 104 days of visitation per year and Mother would pay the cost of the child's transportation from California to Tennessee, as well as pay the costs of accompanying the child. The order also stated that if Father chose to visit the child in California, Mother would pay up to $500 of Father's travel costs.

Father appeals contending that the trial court erred in permitting Mother to relocate to California, and both parties seek to recover their attorneys' fees incurred in the trial court and on appeal.

**ANALYSIS**

**I.**

**MOTHER'S REQUEST TO RELOCATE TO CALIFORNIA**

Tennessee Code Annotated § 36-6-108 governs parental relocation issues. Pursuant to the statutory scheme, the first inquiry a court is to make when a parent contests the other

---

[1]The job offer with ABC Family expired due to the delay caused by Mother needing court approval. Mother presented evidence of a second job offer in California before the referee, however, that job offer also expired prior to the trial before the juvenile court judge.

parent's request to relocate with their child is the amount of time each parent spends with the child. *See* Tenn. Code Ann. § 36-6-108; *Kuwatra v. Kuwatra*, 182 S.W.3d 800, 802 (Tenn. 2005). In this action, it is undisputed that Mother spent substantially more time with the child; therefore, Tenn. Code Ann. § 36-6-108(d)(1) applies. This provision states:

> (1) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child *shall* be permitted to relocate with the child *unless* the court finds:
>
>> (A) The relocation does not have a *reasonable purpose*;
>> (B) The relocation would *pose a threat of specific and serious harm* to the child that outweighs the threat of harm to the child of a change of custody; or
>> (C) The *parent's motive* for relocating with the child *is vindictive* in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d)(1)(A)-(C) (emphasis added). The parent opposing the relocation bears the burden of proof to establish one of these three grounds. *Clark v. Clark*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *3 (Tenn. Ct. App. Dec. 30, 2003). If the opposing parent cannot prove any of the three grounds, the relocation *shall* be permitted. Tenn. Code Ann. § 36-6-108(d)(1).

A.
REASONABLE PURPOSE

There are no bright-line rules with regard to circumstances or factors that will constitute a reasonable purpose for a proposed relocation. *King v. King*, No. M2009-01722-COA-R3-CV, 2010 WL 2730600, at *8 (Tenn. Ct. App. July 9, 2010) (citing *Slaton v. Ray*, No. M2004-01809-COA-R3-CV, 2005 WL 2756076, at *2 (Tenn. Ct. App. Oct. 24, 2005)). Instead, determinations are fact-intensive and require a thorough examination of the unique circumstances of each case. *Id*. (citing *Slaton*, 2005 WL 2756076, at *2). A salary increase and opportunities for career advancement have consistently been held as support for a finding

of a reasonable purpose for the parent's relocation. *Id*. (citing *Dye v. Fowler,* No. M2006-01896-COA-R3-CV, 2007 WL 1515140, at *3 (Tenn. Ct. App. May 23, 2007) (citing *Roberts v. Roberts*, No. E2005-01175-COA-R3-CV, 2005 WL 2860199, at *6 (Tenn. Ct. App. Oct. 31, 2005))). "Previous decisions have also cited the following economic factors: 'the relative significance of the [pay] increase, the cost of living in the proposed location compared to the present location, the firmness of the job offer, opportunity for career advancement and economic betterment of the family unit.'" *Id.* (quoting *Slaton*, 2005 WL 2756076, at *3).

The juvenile court judge found that Mother lost the job she originally had upon moving to Tennessee, that after a lengthy search, Mother was unable to find meaningful employment, and that Mother had been offered a position making $100,000 a year, which the court found would provide her with a better salary and the opportunity for career advancement. The court also found that relocating to California would place Mother in proximity to friends and business contacts. It was upon these and other facts that the juvenile court judge found that Father failed to demonstrate that Mother's relocation to California was not for a reasonable purpose.

Our standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id*.; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc*., 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

Based upon our review of the record, we find the evidence does not preponderate against the juvenile court's finding that Father failed to demonstrate that Mother's relocation to California was not for a reasonable purpose. Mother testified at length to her job search in Tennessee following the loss of her job teaching at the CSB School of Broadcasting. Mother had secured a temporary position, which later became an offer for a permanent position, making $40,000. Mother testified that this position offered no opportunity for advancement or growth. Mother's job opportunity in California, which the head of the company testified to by deposition, would provide a salary of $100,000. Mother testified that she would be working full-time as both an editor and producer on a variety of work such as commercials and television promotions, and that this job offered a better opportunity for advancement in her field. Mother also testified that she had several friends and contacts in the California area, as she had resided there for eighteen years prior to her move to Tennessee. As the trial court correctly noted, our courts have held that relocation for "a better job opportunity, greater salary, and career advancement opportunities, establishes a 'reasonable purpose' within the meaning of the statute." *Butler v. Butler*, No. M2002-00347-

COA-R3-CV, 2003 WL 367241, at *2 (Tenn. Ct. App. Feb. 20, 2003).

Father makes much of the fact that Mother had previously received two other job offers, both of which expired during the pendency of the proceedings. This court has held that a parent seeking to relocate should not be penalized for job offers that became unavailable during the proceedings, and a parent is permitted to present evidence of intervening job offers that also provide an incentive for the relocation. *See King*, 2010 WL 2730600, at *8 (citing *Winans v. Winans*, No. M2004-02566-COA-R3-CV, 2006 WL 1865027, at *7 (Tenn. Ct. App. June 30, 2006)).

We, therefore, affirm the juvenile court's finding that Father failed to establish that Mother's relocation was not for a reasonable purpose.

B.
SPECIFIC AND SERIOUS THREAT OF HARM

Father asserts that the relocation would cause "severe and specific harm" to the child in that the move would deter the father-son relationship and thus cause emotional distress. The juvenile court found that the ground contained in Tenn. Code Ann. § 36-6-108(d)(1)(b) was inapplicable as no evidence was introduced at trial that related to this ground. We agree, finding no evidence in the record to support this ground. We, therefore, affirm the juvenile court's finding that Father did not prove the relocation would cause "severe and specific harm" to the child.

C.
VINDICTIVE MOTIVE

Father contends that Mother's motive to relocate is vindictive because Mother filed her request to relocate with the child after Father filed his petition to obtain additional parenting time. Tennessee Code Annotated § 36-6-108(d)(1)(C) provides that a parent's *motive* for moving is vindictive if "it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child."

The juvenile court found that Mother's relocation was "for economic purposes to benefit her and the minor child, not for the purpose of defeating or deterring Father's visitation rights." We agree.

We will first address Father's contention that the trial court erred in refusing to admit into evidence a prior parenting plan and schedule proposed by Mother, the one proposed before the juvenile referee. It is Father's contention that this plan would support his assertion

that Mother's motive to relocate was vindictive because in that proposed plan Mother offered Father fewer days of parenting time. The juvenile court judge made a finding that the plan was not relevant and excluded it. The admission or exclusion of evidence is within the trial court's discretion. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999). We are unable to conclude that the juvenile court abused its discretion by refusing to admit a previous proposed parenting plan into evidence. We will now focus on the evidence the juvenile court considered to determine whether Mother's motive to relocate was vindictive.

Father's assertion that Mother's motive to relocate is vindictive is based on the fact Mother did not seek court approval to relocate until after Father filed his petition to obtain additional parenting time. While this fact is relevant, we find Father's reliance on this fact mitigated by the fact that Mother informed Father that she was contemplating commuting from Nashville to California for employment purposes prior to the filing of his petition, a fact Father admitted at trial. Moreover, Mother's attorney introduced into evidence a portion of Father's personal logs in which Father noted that the reason he hired an attorney in Tennessee was his fear that once Mother began commuting to California she would choose to reside there. The personal logs also revealed that it was based upon this fear that Father borrowed money from his parents to hire an attorney.

Father also points to previous litigation between the parties over parenting time in support of his contention that Mother's relocation is vindictive. We find this argument unpersuasive for several reasons. The issue, as the statute clearly states, is whether Mother's *present motive* to relocate to California is vindictive. *See* Tenn. Code Ann. § 36-6-108(d)(1)(C); *Simmons v. Simmons*, No. 03A01-9805-CV-00158, 1999 WL 76097, at *6 (Tenn. Ct. App. Jan. 29, 1999). Thus, the fact the parents previously disputed parenting time, without more, is insufficient to establish a present vindictive motive. Moreover, although Father argues that Mother is uncooperative in sharing parenting time, Father admitted that Mother had offered him additional days of parenting time including time on the child's birthday and holidays. Mother also sent Father cards from the child, and sent presents and pictures to Father's family to facilitate a relationship. Further, the parenting plan proposed by Mother, which was adopted by the juvenile court, gives Father 104 days of parenting time. When the parties lived in California, Father only had 66 days of parenting time. Mother also agreed to bear the burden of travel expenses for the child's commutes from California to Tennessee for Father's visitation, and Mother agreed to pay for a percentage of Father's costs should he chose to travel to California.

The evidence in the record does not preponderate against the juvenile court's finding that Father failed to demonstrate that Mother's motive for relocating to California was vindictive.

We have affirmed the juvenile court's findings that Father failed to demonstrate Mother's proposed relocation does not have a reasonable purpose; that it would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or that Mother's motive for relocating with the child is vindictive in that it is intended to defeat or deter the visitation rights of the non-custodial parent or the parent spending less time with the child. Therefore, as Tenn. Code Ann. § 36-6-108(d)(1) directs, Mother's request to relocate to California *shall* be permitted.

We, therefore, affirm the ruling by the juvenile court that Mother shall be permitted to relocate with the minor child to California.

## II.
### ATTORNEYS' FEES

Father contends he is entitled to recover the attorney's fees he incurred in the trial court and those he has incurred on appeal. As Father did not prevail in this appeal, he is not entitled to recover any of his attorney's fees.

Mother contends that the trial court erred in denying her request for her attorney's fees in the trial court. Tenn. Code Ann. § 36-6-108(i) gives the trial court "discretion to award attorney's fees in relocation cases." We review the trial court's decision to deny Mother's request under the abuse of discretion standard. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). Having reviewed the record and considered the factors we believe relevant to this issue, including but not limited to the respective income and earning capacity of the parties, we are unable to conclude that the trial court abused its discretion in denying Mother's request to recover her attorney's fees at trial.

As for Mother's attorney's fees on appeal, whether to award a party her attorney's fees on appeal is solely within our discretion. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In determining whether an award for attorney's fees is warranted, we consider, *inter alia*, the ability of the requesting party to pay his or her own attorney's fees. *See Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). As we stated immediately above, having reviewed the record and considered the factors we believe relevant to this issue, we respectfully decline Mother's request to recover her attorney's fees on appeal.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellant.

_____
FRANK G. CLEMENT, JR., JUDGE