IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2013 Session

## TRACY LYNN MUHLSTADT v. LARRY DAVID MUHLSTADT

**Appeal from the Circuit Court for Wilson County**
**No. 2011CV215     Clara W. Byrd, Judge**

_____

**No. M2012-01267-COA-R3-CV - Filed July 19, 2013**

_____

Petition to modify child support obligation was filed by Father; Mother filed a counter-petition requesting that the court make a determination as to where their child would attend school. The trial court dismissed Father's petition when he did not provide information to support his assertion that he no longer received a portion of the income upon which his child support obligation was based and therefore he failed to show a change of circumstance relative to his income. The court found that it would be in the child's best interest to attend school in the school for which Mother's residence was zoned and granted Mother's counter-petition; the court also awarded attorney fees to Mother. We affirm the court's decision relative to the child's school enrollment. We reverse the order dismissing Father's petition for modification and remand the case for reconsideration; we reverse the award of attorney fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed In Part and Reversed In Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

John B. Holt, Springfield, Tennessee, for the Appellant, Larry David Muhlstadt.

Amanda G. Crowell, Lebanon, Tennessee, for the Appellee, Tracy Lynn Muhlstadt (Chilelli).

### OPINION

Tracy Muhlstadt ("Mother") and Larry Muhlstadt ("Father"), the parents of one child born July 19, 2007, were divorced on July 10, 2008 in Robertson County Circuit Court. An Agreed Permanent Parenting Plan Order was incorporated into the final decree in which

Mother was named Primary Residential Parent; residential parenting time was split equally and Father ordered to pay $365.00 per month in child support.

On April 1, 2011, Father filed a Petition for modification of child support, alleging that there had been significant variances in the parties' incomes, and that a material change in circumstances existed warranted a reconsideration of child support.[1]  On August 26, Mother filed a counter-petition, requesting the court issue an order requiring the child to attend Castle Heights Elementary, the school for which Mother's residence was zoned.  On February 24, 2012, Father filed an answer.

At a hearing on March 29, 2012, the case was continued to April 30 to allow Father to provide documentation showing income and other documents relating to a trust in his father's name, the Andrew C. Muhlstadt Trust (the "Muhlstadt trust"), from which he received funds at the time the original child support obligation was set. Following the April 30 hearing, the court entered an order on May 9 dismissing Father's petition and granting Mother's request that the child attend Castle Heights Elementary.  On May 23, 2012, the court entered an order granting Mother attorneys' fees and costs totaling $6,384.75 for her defense of the action.  Father filed a notice of appeal on June 8.

Father raises the following issues:

1. Did the trial court err in the finding of [Father's] income for a determination of child support?
2. Did the trial court err in its determination that the minor child should attend school in [Mother's] zoned school district?
3. Did the trial court err in the award to [Mother] of attorney fees?

### DISCUSSION

We review the trial court's findings of fact *de novo*, presuming them to be correct unless the evidence preponderates against the findings. *Demers v. Demers*, 149 S.W.3d 61, 68 (Tenn. Ct. App. 2003) (citing *Huntley v. Huntley*, 61 S.W.3d 329, 334 (Tenn. Ct. App. 2001)).  We review the court's conclusions of law *de novo* with no presumption of correctness. *Id.*

---

[1] Mother requested that the case be transferred to Wilson County Circuit Court because both parties had resided in Wilson County since 2008; the case was transferred on May 3 and Mother filed an answer on May 4.

**I. FATHER'S PETITION FOR MODIFICATION OF CHILD SUPPORT**

Father asserts that the trial court erred when it dismissed his petition based upon the finding that he was receiving income that, in fact, he was not receiving; Father contends that the evidence shows that he was no longer receiving an annual payment of $22,000 from the Muhlstadt trust that he had been receiving at the time child support was set.

Modification of an award of child support is governed by Tenn. Code Ann. § 36-5-101(g)(1); the modification must be based on a "significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered." *Id*. Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(c) defines a significant variance as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order." Tenn. Comp. R. & Regs. 1240-02-04-.05(3) sets forth the procedure for determining whether a significant variance is present under the circumstances presented in this case:

> To determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using current evidence of the parties' circumstances. . . . If the current child support order was calculated using the income shares guidelines, compare the presumptive child support order amounts in the current and proposed orders. . . . If a significant variance exists between the two amounts, such a variance would justify the modification of a child support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed, or except as otherwise restricted by paragraph (5) below or 1240-2-4-.04(10) above.

Once a significant variance has been shown, Tenn. Comp. R. & Regs. 1240-02-04-.05(5) directs the court as follows:

> [T]he tribunal shall increase or decrease the support order as appropriate in accordance with these Guidelines unless the significant variance only exists due to a previous decision of the tribunal to deviate from the Guidelines and the circumstances that caused the deviation have not changed. If the circumstances that resulted in the deviation have not changed, but there exist other circumstances, such as an increase or decrease in income, that would lead to a significant variance between the amount of the current order, excluding the deviation, and the amount of the proposed order, then the order may be modified.

The statement of evidence introduced at the hearing[2] included the following matters related to Father's receipt of payments from the Muhlstadt trust:

30. Father's employment income for 2011 was Forty Thousand, Six Hundred Thirteen and 54/100 ($40,613.54) Dollars.
***
32. Mother testified that [Father] has always received gifts from a Trust Fund in Illinois. The parties received Forty-Four Thousand Dollars in trust fund income from paternal grandmother during the six years of their marriage. Mother testified that after the divorce, Father would receive Twenty-Two Thousand Dollars per year from the trust fund and the minor child would receive Twenty-Two Thousand Dollars per year from the trust fund.
33. [Father] acknowledges that his Father, upon his passing, set up a Trust Fund for the benefit of the [child's] paternal grandmother, and that the [child's] paternal grandmother receives income from the Trust.
34. Father stated that he is not the owner of the trust, that he has no control of the Trust and that he has not and does not receive any benefits directly from the Trust.
35. Father testified that the gifts received by Father in the past had come directly from the [child's paternal] grandmother.
36. [Father] submitted a letter from the attorney managing the trust in Chicago, Illinois, indicating that the [child's paternal] grandmother is the only beneficiary that is required to receive distributions from the Trust and all other distribution[s] were at the discretion of the Northern Trust Company, located in Chicago Illinois, as Trustee.
***
47. Father testified that he now receives distributions from the Trust on an "as needed" basis.

Other evidence at trial included Father's 2011 W-2 wage statement from his employment with the Metropolitan Board of Education and his 2011 federal income tax return; both list Father's 2011 wages as $40,614.00. Also introduced were statements from Father's account at Wilson Bank & Trust from July 2009 through February 2012. The statements showed

---

[2] There was no transcript of the March 29 or April 30 hearings filed as part of the record on appeal. The record shows that Mother filed a Statement of Evidence with the trial court on August 15, 2012, to which Father filed objections on August 27. The record on appeal did not contain an order from the trial court approving Mother's statement of evidence or resolving Father's objections; as a consequence the case was remanded for the court to approve a statement of the evidence in accordance with Tenn. R. App. P. 24(f). The trial court entered an Order Regarding Statement of the Evidence on June 26, 2013.

regular monthly deposits from the Metropolitan Government, consistent with Father's employment with the Metropolitan Board of Education. The statements also showed periodic, unassigned deposits, totaling $15,301.46 in 2009; $15,798.19 in 2010; and $2,330.20 in 2011.[3]

With respect to Father's continued receipt of the $22,000 gift, the court concluded:

> The Court finds that Father has the ability to provide documentation with regard to the trust and/or its distributions and has not provided it. Father has not proved that he cannot obtain $22,000 per year from the trust at this time and has testified that he now receives distributions on an "as needed" basis. It is not clear to the court that the Father could not obtain even more than $22,000 per year from the trust if he requested it. Father has failed to provide trust documents, K-1s or any documentation regarding gifts which could be indicated on his mother's tax returns.

We disagree with the court's conclusion; the dismissal of his petition is not supported by the record. The evidence is consistent with Father's testimony that he no longer receives the $22,000.00 he was receiving at the time the original child support obligation was set and that he receives money from his mother on an "as needed" basis. The evidence also shows that he is not a beneficiary of the Muhlstadt trust and, thereby has no ability to compel the trustee to provide him with information regarding the trust; that he does not receive distributions directly from the trust; and that he has no ability to compel payments to him from the trust. There is no evidence showing or a finding by the court that Father's failure to provide the trust documentation was wilful or contrived; indeed, a wilful failure to provide the information would be contrary to Father's interest in presenting the petition. While Tenn. Comp. R. & Reg.§ 1240-02-04-.04(3)(a)(1)(xviii), governing the determination of child support, provides that "gross income" for purposes of setting support includes "[g]ifts of cash", Father's inability to provide the specific information which the court referenced in its order does not permit the court to effectively impute gift income to him in the absence of proof that he continued to receive such.[4]

---

[3] The monthly deposits were: $15,000.00 in August 2009; $248.00 in November 2009; $53.46 in December 2009; $1,770.00 in January 2010; $5,472.89 in March 2010; $6,565.11 in June 2010; $1,465.03 in October 2010; $1,500.00 in November 2010; $25.15 in December 2010; $60.00 in January 2011; $435.28 in February 2011; $217.83 in March 2011; $1,000.00 in April 2011; $36.09 in May 2011; $200.00 in November 2011; and $381.00 in December 2011; $1,060.00 in January 2012; and $1,025.00 in February 2012..

[4] We note also the following observation relative to Father's receipt of funds from his Mother in the
(continued...)

Accordingly, we reverse that portion of the judgment dismissing Father's petition to modify child support and remand the case for a redetermination of Father's support obligation.

## II. MOTHER'S CROSS-PETITION RELATIVE TO THE CHILD'S SCHOOL ZONE

In Mother's counter-petition, she alleged that the parties were unable to agree on a preschool for the child and requested the court order that the child be enrolled in public school in the school to which Mother's residence was zoned; Mother asserted that to do so would be in the child's best interest. Father contends that the court, in its order, "gave no deference to the parenting plan,[5] the parties' employment circumstances, and the financial situation."

As we have previously noted,

> Trial courts have broad discretion to fashion parenting plans that best serve the interests of the children. They must, however, base their decisions on the evidence presented to them and upon the proper application of the relevant principles of law. While we are reluctant to second-guess a trial court's decisions regarding a parenting plan, we will not hesitate to do so if we conclude that the trial court's decision is not supported by the evidence, that the trial court's decision rests on an error of law, or that the child's interests will be best served by another parenting arrangement.

*Shofner v. Shofner*, 181 S.W.3d 703, 716 (Tenn. Ct. App. 2004). In *Eldridge v. Eldrige*, 42 SW3d 82 (Tenn. Ct. App. 2001) the Tennessee Supreme Court laid out the abuse of discretion standard in domestic relations cases:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made."

---

[4](...continued)
in the portion of the order in which the court discussed Mother's cross-petition:

> Father's mother has signed a letter of intent to pay all private school tuition for the minor child at Ezell Harding Christian School in Nashville, Tennessee. For her to do so when Father filed a Petition that he is no longer receiving a monetary gift upon which child support should be based indicates that there may be a control issue between Father and his mother.

[5] In the parenting plan, the parties were given joint authority to make educational decisions.

A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge*, 42 S.W.3d at 85 (internal citations omitted).

The statement of evidence included the following pertinent to the granting of the cross-petition:

6. The Mother has remarried and has a child born to that marriage.
***
8. The Mother has been employed for more than ten (10) years in the insurance industry, with her office being located in Brentwood, Tennessee.
***
10. The Father has been employed for eight (8) years as a school teacher at Antioch High School, located in Davidson County, Tennessee.
11. The Mother's residence is zoned for Castle Heights Elementary School in Lebanon Special School District.
12. The Father's residence is zoned for Gladeville Elementary School in the Wilson County School District.
13. The Father desires that the minor child attend private school at Ezell-Harding Academy, located at 574 Bell Road, Antioch, TN 37013.
14. The Father proposed that the tuition to the private school be paid as a gift from the paternal Grandmother.
15. The paternal Grandmother signed a financial responsibility form in which she agreed to be "responsible party number two" (or cosigner) with regard to the financial responsibility for Ezell-Harding Academy as set forth in Trial Exhibit #3.
***
17. Ezell-Harding is less than ten (10) minutes from Father's employment.
18. The Mother desires that the child attend Castle Heights Elementary School, which is the public school where she is zoned.
19. Castle Heights is approximately five (5) minutes from where Mother resides.
20. The Mother states that the maternal grandmother lives close to Castle Heights Elementary School, and could be there to assist picking up the child in an emergency, as neither parent works in Lebanon.

21. Castle Heights is approximately twenty (20) minutes from Father's residence, and approximately forty (40) minutes from where Father works.
***
41. The Mother is opposed to the minor child attending school in Nashville and has asked that the Court allow her to enroll the child in the public school for which she is zoned.
42. The Mother testified that she desired for the child to be an active part of the community in which he and his younger sister reside and to participate in school, sports, and extracurricular activities in Wilson County, Tennessee.
43. The Father did not request that the Court order the child to attend the public school for which he is zoned.

In its order granting the cross-petition, the court discussed the testimony referenced above at length and the best interest of the child, giving consideration to the parties' financial situation[6] and the fact that, while Mother and Father both lived in Wilson County, neither worked there; the court noted that "there is an advantage to enrollment at Castle Heights because the child has a great-grandmother in good health who can take him or pick him up from school as needed."

The court's determination that the best interest of the child would be served by enrolling him in Castle Heights Elementary School is supported by the evidence; the court did not abuse its discretion in granting Mother's petition.

### III. AWARD OF ATTORNEYS' FEES TO MOTHER

We next address Father's contention that the trial court's award of attorneys' fees to Mother was error. The decision to award attorney fees and the amount awarded are discretionary with the trial court. *Melvin v. Johnson–Melvin*, No. M2004–02106–COA–R3–CV, 2006 WL 1132042, at *9 (Tenn. Ct. App. Apr. 27, 2006). Accordingly, a trial court's decision will be upheld unless the court abuses its discretion; such abuse will be found if the court applies "incorrect legal standards, reach[es] an illogical conclusion . . . , or employ[s] reasoning that causes an injustice to the complaining party." *Kline v. Eyrich*, 69 S.W.3d 197, 203 (Tenn. 2002); *Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

---

[6] The court noted that "[b]ased on the parties' income, neither is able to pay private school tuition" and that the Court "cannot order the Father's mother to pay [the tuition at Ezell-Harding]."

In Tennessee, generally each party must pay their own attorneys' fees unless there is a statute or a contractual provision that provides otherwise. *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005) (citation omitted). Tenn. Code Ann. § 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

This statute has been interpreted by the courts as "allowing for the award of attorney's fees to a party defending an action to change a prior order on the theory that the defending party is enforcing the prior order." *Hansen v. Hansen*, 2009 WL 3230984, No. M2008-02378-COA-R3-CV, at *3 (Tenn. Ct. App. Oct. 7, 2009) (citations omitted).

In light of our holding that Father's child support obligation should be reconsidered on remand, we vacate the award of attorney fees to Mother; the award of fees should be reconsidered in accordance with the disposition of Father's petition to modify.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and the case remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE