IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 17, 2013 Session

## ILIE NITA v. OLGA NITA

**Appeal from the Circuit Court for Davidson County**
**No. 10D586      Phillip R. Robinson, Judge**

**No. M2013-00201-COA-R3-CV- Filed January 31, 2014**

In this divorce appeal, husband challenges the trial court's decisions regarding the primary residential parent, rehabilitative alimony, the division of the marital estate, and the award of attorney fees. With the exception of the designation of alimony as "rehabilitative," we find no error in the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

ANDY D. BENNETT, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Jennifer L. Honeycutt and Martin Stephen Sir, Nashville, Tennessee, for the appellant, Ilie Nita.

Jon Steven Jablonski and Martha C. Child, Nashville, Tennessee, for the appellee, Olga Nita.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Olga Nita ("Wife") and Ilie Nita ("Husband") were married in Ukraine, Wife's native country, in 1996. Prior to the marriage, Wife obtained a degree in early childhood education in Ukraine.

Husband moved to the United States in 1986 after leaving his native Romania. In 1993 he moved to Nashville; he bought a house there in 1994 for $77,000. Wife came to the United States in 1997 and moved into the house with Husband. The parties have two

children, Michael, born in 2000, and Eric, born in 2002. Also in 2002, the parties moved to a new house on Bending Creek Road in Antioch, Tennessee; this house was titled in the name of Husband and Wife as tenants by the entirety. Husband used $72,000 from the sale of the first house he bought in 1994 to help make the down payment on the new house.

Upon arriving in the United States and finding out that she would need English classes and several years of additional study to become a teacher in the United States, Wife took a job bussing tables at a cafeteria. After Michael was born in 2000, Wife stayed at home to take care of the children. Once both children were in school, Wife returned to the work force. She completed training as a medical assistant but, according to her testimony, she was unable to locate a job as a medical assistant because she lacked experience. She then completed training as a certified nursing assistant ("CNA") and, beginning in 2010, worked in several nursing homes. At the most recent position, she earned $9.50 an hour, but she quit this job because of physical problems with lifting patients. In April 2011, Wife began working at a day care center for $8.00 an hour.

As of September 2012, Husband had been working at Steel Summit for 13 years. His pay stub for June 8, 2012 showed an hourly pay rate of $18.79. The rate of pay varied somewhat according to which shift Husband chose to work. Moreover, according to the September 7, 2012 pay stub, Husband had earned $11,796.03 in overtime pay thus far in 2012.

Wife filed a complaint for divorce in March 2010 alleging irreconcilable differences and inappropriate marital conduct; Husband filed a countercomplaint. The trial court initially issued an order reflecting an agreement of the parties pursuant to which both parties were to remain in the marital home. Husband was to continue paying the monthly mortgage and utilities, and he was to pay Wife $100 per week toward food costs. After a hearing in February 2011, the trial court entered a pendente lite order making Wife the primary residential parent with Husband having parenting time for one week a month, awarding Wife temporary possession of the home, and ordering Husband to pay $729 per month in child support and to pay any property taxes due on the home. In December 2011, the court ordered the parties to have equal parenting time on a week-to-week schedule, with the parent exercising parenting time staying in the marital home. Husband was ordered to pay Wife $75.00 per week in support.

2

*Final hearing*

The matter was heard over four days in July and September 2012.[1] The court heard testimony from the parties and from other witnesses including Husband's supervisor at work, Brenda Menzies (psychotherapist for the children), Michael, Eric, Jennifer Hanket (psychologist who saw the children), two of Wife's friends, and a caseworker from the Department of Children's Services. The testimony will be summarized below as relevant to the issues on appeal.

The court made a detailed ruling from the bench on September 21, 2012, and a final decree was entered on October 9, 2012. The court awarded Wife a divorce and made her the primary residential parent; Husband was to have 94 days of parenting time a year with a child support obligation of $1,126.00 per month. Husband was required to pay Wife $800.00 per month for seven years as rehabilitative alimony. The court divided the marital estate equally between the parties; Wife was awarded the marital home and was required to pay Husband for his share of the equity. The court also awarded Wife her reasonable attorney fees. Husband filed a motion to alter or amend the final decree, but the court denied the motion, and this appeal followed.

*Issues on appeal*

In this appeal, Husband argues that the trial court erred in naming Wife the primary residential parent and limiting him to 94 days of parenting time; in granting Wife rehabilitative alimony; in its division of the marital estate; and in awarding Wife her reasonable attorney fees. Wife argues that the trial court was correct in all of these matters and that she should be awarded her attorney fees on appeal.

ANALYSIS

*Parenting time*

Husband asserts that the court erred in making Wife the primary residential parent and limiting his parenting time to 94 days a year. At oral argument, Husband took the position that the trial court should have awarded the two parties equal parenting time.

Our review of the trial court's findings of fact is de novo on the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P.

---

[1]Until sometime in 2012, the case was in the Third Circuit Court for Davidson County. Prior to the final hearing, the case was moved to the Eighth Circuit Court for Davidson County.

13(d). A trial court's determinations regarding the primary residential parent "often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). As our Supreme Court has stated, because "'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge[,]'" we review such decisions for an abuse of discretion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)); *see also Armbrister v. Armbrister*, No. E2012-00018-SC-R11-CV, 2013 WL 5688775, at *6, — S.W.3d — (Tenn. Oct. 21, 2013). An abuse of discretion occurs when "the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

The trial court granted Wife a divorce because it found her guilty of lesser fault as compared to Husband. The court found that Husband was verbally and physically abusive toward Wife and stated that, "Much of Mr. Nita's testimony is not credible and is not supported by the evidence." The court also "question[ed] the credibility of Mr. Nita when comparing his testimony with that of the children." In making its custody determination, the trial court considered the factors set forth at Tenn. Code Ann. § 36-6-106(a).[2] The court analyzed the factors as follows:

> 1. Love, affection, and emotional ties existing between the parents and children.
>    Both parents love the children. The Court is concerned about statements made by Mr. Nita to the children and finds that Mr. Nita attempted to damage the relationship between the children and Mrs. Nita. Therefore, this consideration favors the mother.
> 2. Disposition of the parties to provide for the children. This consideration favors the mother because she has been the primary caretaker.
> 3. The importance of continuity . . . in the children's lives. This favors the mother since she has been the primary caretaker.
> 4. Stability of the family unit of the parents. Mr. Nita has so much anger toward Mrs. Nita that anger renders his home unstable. This favors Mrs. Nita.
> 5. Mental and physical health of the parents. This is neutral between the parties.

---

[2]Tennessee Code Annotated section 36-6-404(b) sets out a similar list of factors applicable to the determination of a permanent parenting plan. In most cases, the analysis and result are the same under the two statutes. *Thompson v. Thompson*, No. M2011-02438-COA-R3-CV, 2012 WL 5266319, at *6 (Tenn. Ct. App. Oct. 24, 2012). The trial court and the parties applied the factors listed in Tenn. Code Ann. § 36-6-106(a), and we will do the same.

6. The home, school and community record of the children. This is neutral between the parties.

7. Preference of the children. The children's preference is to live with Mr. Nita. However, Mr. Nita had made very damaging statements about Mrs. Nita in order to influence the children. The Court therefore gives no weight to the children's preference and their preferences are not considered.

8. Evidence of physical or emotional abuse of the children. The Court finds Mr. Nita guilty of emotionally abusing the children. He has told them that Mrs. Nita has men in the home, told one child why the mother did not love him. One child's testimony contradicted Mr. Nita. The children testified that they learned the words "bitch and whore" – which they called Mrs. Nita – from Mr. Nita.[3] The Court considers this to be emotional abuse. The consideration favors Mrs. Nita.

9. This consideration [character of persons residing in or frequenting home of a parent] is inapplicable.

10. Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents consistent with the best interests of the child. This favors Mrs. Nita.

Based upon this analysis, the court made Wife the primary residential parent and awarded Husband 94 days of parenting time a year. Husband asserts that the trial court did not give proper weight to certain evidence regarding Wife's statements to the children about their father and her anger, and that the trial court improperly disregarded the children's testimony about instances when Wife locked Michael in the garage, encouraged Eric to hit Michael, and locked herself in her room for long periods of time. From the testimony elicited at trial, it appears that Husband and Wife had a volatile relationship. Moreover, the testimony of one spouse often conflicted with that of the other.

The trial court was in the best position to evaluate the credibility of the witnesses and determine what weight to give their testimony. *Gaskill*, 936 S.W.2d at 633. The court expressly found Husband not credible. In its oral ruling, the court stated that it based its credibility determination "not only on his statements that were contradicted by other witnesses, but the fact that he submitted a correspondence to different judges in this

---

[3]Husband correctly points out that Michael actually testified that he learned these terms at school. Michael also testified, however, that his father told him that his mother was "crazy" and "a psycho," and that his father said he had e-mails showing his mother's alleged affairs.

courthouse, which, of course, was terribly inappropriate."[4] Much of Husband's argument on appeal references the testimony of the children and the testimony of Ms. Menzies regarding statements made by the children. However, the court emphasized Husband's inappropriate behavior, including his efforts to poison the children's relationship with Wife, and declined to give their preferences any weight. Although the court did not specifically reject all of the children's testimony, the court called into question the veracity of some of their testimony as being based on derogatory statements made to them by Husband. At the hearing, the court admonished Husband as follows:

> Mr. Nita, I want you to understand, sir, that while you have claimed that the mother has made derogatory statements about you, what we heard from the children sitting in this courtroom was that you are the one that made statements to them. One of the children specifically stated that the father had told him that men were coming into the back of the house when the mother was there. There was no evidence whatsoever presented to this Court that would substantiate such allegations. And even if they were, you should never have had any contact or any discussion with your children regarding that. In addition, the children specifically, one of them specifically stated that you made statements to that child as to why the mother didn't love him. When I asked you on examination, direct examination, if you made any such statements, you had categorically denied it. So I'm left to either believing you or believing the children. In this instance, I feel like I have no choice but to believe the children.

We find no error in the trial court's credibility determinations and its decision to name Wife the primary residential parent.

As to the trial court's decision to award him only 94 days of parenting time, Husband asserts that this determination conflicts with the language of Tenn. Code Ann. § 36-6-106(a) which provides:

> In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the *maximum participation possible* in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors.

---

[4]The record includes a letter written by Husband to various judges complaining about the actions of the trial court and making accusations about Wife.

6

(Emphasis added). This court has recognized the significance of this provision (amended in 2011): "Tennessee courts must now fashion custody arrangements so as to give each parent the maximum amount of time possible with the child, in accordance with the child's best interests." *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012). In light of the contentious relationship of the parties and the court's findings regarding Husband's emotionally abusive behavior toward the children, we cannot say that the trial court erred in concluding that it was in the best interest of the children for Wife to have substantially more time with them than Husband. It is noteworthy that, at trial, Husband submitted a proposed parenting plan requesting that he be named the primary residential parent and that Wife have 94 days of parenting time a year.

*Alimony*

Husband challenges the trial court's award of rehabilitative alimony and the amount of that award.

A trial court has broad discretion to determine the need for spousal support, as well as the appropriate nature, amount, and duration of that support. Tenn. Code Ann. § 36-5-121; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). An award of spousal support will not be disturbed on appeal absent an abuse of discretion. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). Our Supreme Court has stated that, "when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011).

Tennessee Code Annotated section 36-5-121(i) instructs the court to consider all relevant factors in determining whether spousal support is appropriate and in determining the nature, amount, length of term, and manner of payment. The statute itself lists a number of relevant factors. Tenn. Code Ann. § 36-5-121(i)(1)–(12). The most important factors for the court's consideration are the need of the disadvantaged spouse and the ability to pay of the obligor spouse. *Bratton*, 136 S.W.3d at 604; *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001). The trial court in this case found that Wife "has a need for spousal support and [Husband] has the ability to pay."

On appeal, Husband disputes that Wife has the need for alimony and that he has the ability to pay. Emphasizing the age difference between Husband (61) and Wife (45) and the Wife's training as a teacher in Ukraine, Husband argues that Wife has the greater earning capacity and that the court should have found her to be underemployed. The court specifically

7

rejected Husband's reasoning, however, in its ruling:

> It's been suggested to the Court in argument and in some of the testimony that Ms. Nita did not work hard. She could use her education or she could be a medical assistant. I want both parties to understand the Court did not find any evidence that Ms. Nita was lazy or refused to work. To the contrary, she had worked hard to obtain a degree in the Ukraine. Unfortunately, that degree did not translate well when she came to the United States because of the challenges with the English language and the necessity of recertification for her to be able to teach. So she has not been able to use that in the 16 years of the parties' marriage.

The court later found that Wife could not find work as a medical assistant because she lacked experience. Husband asserts that there was no evidence regarding the job market for medical assistants or Wife's inability to find a position, but the court based its finding on Wife's testimony, which it found credible. The court found that Wife could earn more than the $8.00 per hour she was currently earning at the day care center.

As to Husband, the court found his monthly income for child support purposes to be $5,059.00. This amount took into consideration Husband's significant overtime earnings in recent years. Husband put on the testimony of his supervisor, who stated that the company was implementing plans to minimize overtime in the future. Nevertheless, we cannot say that the evidence preponderates against the trial court's decision to base its income findings on the recent earning history and not to factor in possible future changes in overtime. (If such changes do occur, Husband can seek modification of his child support and alimony obligations.)

We do, however, question the trial court's categorization of the alimony award as "rehabilitative." Tennessee Code Annotated section 36-5-121(e)(1) states:

> To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Rehabilitative alimony is "intended to assist an economically disadvantaged spouse in acquiring additional education or training" to achieve a higher standard of living. *Gonsewski*, 350 S.W.3d at 108. Transitional alimony, in contrast, is awarded "when the court finds that

rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce . . . ." Tenn. Code Ann. § 36-5-121(g)(1). Because the trial court did not award alimony to enable Wife to pursue rehabilitation in the form of education or training, the trial court erred in labeling the award "rehabilitative." *See Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *5 (Tenn. Ct. App. Oct. 24, 2012). The alimony award should be considered transitional alimony. The court specified that the award would remain modifiable. *See* Tenn. Code Ann. § 36-5-121(g)(2)(B).

The remaining issue regarding alimony is whether the amount of the award is excessive considering Husband's income and expenses. As discussed above, the gross income figure used by the court is $5,059.00 per month, and the evidence does not preponderate against that amount. Husband's monthly budget shows expenses totaling $2,335.00. He points out that this figure does not include housing because he was living in his car. (Husband testified that he could not afford housing while paying expenses of the marital residence as well as temporary child support of $729 a month.) Husband was ordered to pay $1,126.00 per month in child support. He argues that he has debts to pay, but his expenses include an amount for at least some of the debt. Moreover, one of the factors included under Tenn. Code Ann. § 36-5-121(i) is the division of marital property (discussed below). Tenn. Code Ann. § 36-5-121(i)(8). Wife was ordered to pay Husband $58,538.50 for his share of the marital home.[5] Based on a monthly income of $5,059.00, we cannot say that the trial court erred in finding that Husband had the ability to pay Wife $800 per month in spousal support.

## Marital estate

The parties stipulated to the value of all of the marital assets, and the trial court awarded each party half of the assets. Husband argues that he should have received a greater portion of the marital assets because he made a greater contribution to the acquisition and appreciation of the marital home.

A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision unless that decision is inconsistent with the factors set out in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates against the decision. *Jolly v. Jolly*, 130 S.W.3d 783, 785-86 (Tenn. 2004). An equitable distribution is not necessarily an equal one. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

---

[5]The statutory factors also include the relative fault of the parties, Tenn. Code Ann. § 36-5-121(i)(11), and the court found Husband to have greater fault and to be guilty of abuse toward both Wife and the children.

9

The pertinent facts are that Husband bought a house in 1994 (prior to the marriage) for $77,000. He made a $40,000 down payment. The parties married in 1996, and Wife came to the United States and moved into the house with Husband in 1997. This house was sold in 2002, and Husband received $72,000 from the sale of the property. The parties bought a house on Bending Creek Road in 2002, and Husband put the $72,000 (plus some additional funds) into the down payment; Wife contributed $3,700. The property was titled jointly to Husband and Wife. At the time of the divorce, the parties agreed that the house was worth $145,000.

As to the marital home, there is no dispute that this house constitutes marital property.[6] Husband argues that his contribution of $76,000 to the down payment allowed the parties to purchase the property, and the bulk of that money came from property he owned prior to the marriage. He goes on to assert:

> Further, it is undisputed that Mr. Nita was the primary breadwinner, and the sole financial provider for approximately ten (10) years. Based upon these facts, it is clear that Mr. Nita was primarily responsible for the parties' acquisition of the home, for its preservation, and for its appreciation. Therefore, Mr. Nita contends, an equitable distribution of property would be one that awarded him a larger share of the parties' marital estate.

We cannot agree with this reasoning.

Husband's argument assumes that the entirety of the $72,000 used as part of the down payment on the Bending Creek Road house was his separate property. Marital property includes the "income from, and any increase in value during the marriage of, property determined to be separate property . . . if each party substantially contributed to its preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(1)(B); *see also Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996). Based upon the amount netted after the sale of the first house, there was a significant increase in the equity during the parties' marriage (from $40,000 to over $70,000). Crediting Wife's testimony that she "helped financially with household expenses, bussed tables, and was homemaker," the court found that Wife

---

[6] Marital property includes "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage." Tenn. Code Ann. § 36-4-121(b)(1)(A). Transmutation occurs "when a spouse used separate property as the down payment for the marital home and offered no other evidence to rebut the presumption that the down payment was a gift to the marital estate." *Gleaves v. Gleaves*, No. M2007-01820-COA-R3-CV, 2008 WL 4922533, at *5 (Tenn. Ct. App. Nov. 13, 2008) (citing *Eldridge v. Eldridge*, 137 S.W.3d 1, 14 (Tenn. Ct. App. 2002)). Factors used to determine whether transmutation has occurred include use of the property as a marital residence and placing the title in joint ownership. *Id.*

contributed to the appreciation in value of the first house and concluded that the appreciation in value was a marital asset.

As to the equitable division of the marital property, the statutory factors include the following:

> The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role.

Tenn. Code Ann. § 36-4-121(c)(5)(A). Therefore, Husband's suggestion that his status as the primary breadwinner should entitle him to a greater share of the marital estate than that of Wife, who was primarily a homemaker, is erroneous.

We further reject Husband's assertion that the trial court failed to give adequate consideration to all of the statutory factors. The trial court did not make specific reference to each statutory factor, but "its findings clearly reflect its consideration of the factors." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. 2010). In its decree, the court made express findings regarding the duration of the marriage, Wife's efforts to get additional training and find work, Husband's history of hard work and ability to earn a good income, the joint titling of the house, the contributions of both parties to the purchase and preservation of the house, and the fact that both parties lived in the house. The court found that Wife "earned her interest in the home and that [Husband] is not entitled to a disproportionate division of the marital estate."

We find no error in the court's decision to divide the marital estate equally between Husband and Wife.

*Attorney fees*

The trial court ordered Husband to pay Wife's attorney fees in the amount of $9,000.00. He argues that Wife has sufficient funds to cover her own attorney fees and that the court erred in awarding her attorney fees in light of its findings that Wife was guilty of inappropriate marital conduct and that her actions contributed to the custody battle and breakdown of the marriage.

Decisions to award attorney fees are reviewed under an abuse of discretion standard. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Thus, we are required to

11

uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

An award of attorney fees in a divorce case is generally characterized as alimony in solido. *Owens v. Owens*, 241 S.W.3d 478, 495 (Tenn. Ct. App. 2007). Thus, in considering a request for attorney fees, a trial court must consider all of the factors contained in Tenn. Code. Ann. § 36-5-121(i). (Contrary to Husband's assertion, however, there is no requirement that the court make specific findings with respect to the factors.) Husband emphasizes that one of the statutory factors is the relative fault of the parties; he fails to mention, however, that the trial court, while finding Wife to be "guilty of some inappropriate marital conduct," found Husband to be more at fault and guilty of abusive behavior toward both Wife and the children.

A trial court ordinarily "will award attorney's fees as alimony when an economically disadvantaged spouse would otherwise be forced to deplete assets in order to pay attorney's fees." *Id.* at 496. In light of all of the evidence in this case, we find no abuse of discretion in the court's award of attorney fees to Wife as the disadvantaged spouse.

CONCLUSION

We modify the trial court's alimony award to designate the alimony as transitional rather than rehabilitative. In all other respects, we affirm the decision of the trial court. We deny Wife's request for attorney fees on appeal. Costs of appeal are assessed against Husband, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE