# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 18, 2015 Session

## DANIEL W. MITCHELL v. TRICIA LURLENE HALL

**Appeal from the Circuit Court for Sevier County**
**No. 2002-0739-II     Richard R. Vance, Judge**

_____

### No. E2014-01919-COA-R3-CV-FILED-FEBRUARY 26, 2016
_____

This appeal arises from a dispute over modification of child support.  Daniel W. Mitchell ("Petitioner") filed a petition against his ex-wife Tricia Lurlene Hall ("Respondent") in the Circuit Court for Sevier County ("the Trial Court") seeking a modification of his child support obligation given the parties' second oldest child turning 18.  The matter was referred to a Special Master.  The Trial Court designated the date of the final hearing, March 31, 2014, as the effective date for the modification of child support rather than the date when the child at issue reached age 18, and ordered Petitioner to pay an arrearage accordingly.  The Trial Court also awarded Respondent attorney's fees and assessed all of the Special Master's fee to Petitioner.  The Trial Court approved the Special Master's findings regarding Petitioner's income, including the finding that Petitioner was voluntarily underemployed, for purposes of calculating his child support obligation. Petitioner appeals to this Court.  We reverse the Trial Court in its selection of the effective modification date and instead set the date to be that of the relevant child's reaching age 18. We affirm the Trial Court in all other respects. We affirm, in part, and, reverse, in part, the judgment of the Trial Court, and remand for a new calculation of Petitioner's arrearages consistent with this Opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed, in Part, and, Reversed, in Part; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and THOMAS R. FRIERSON, II, JJ., joined.

J. Eric Harrison, Morristown, Tennessee, for the appellant, Daniel W. Mitchell.

James Lee Gass, Sevierville, Tennessee, for the appellee, Tricia Lurlene Hall.[1]

_____

[1] Mrs. Hall submitted her brief while then still pro se.

# OPINION

## Background

Petitioner and Respondent were divorced in September 2003. The parties have three children: Michael, born in 1992; Marisa, born in 1993; and Macey, born in 1999. In a 2008 agreed order, the parties reached an agreement regarding a permanent parenting plan and child support. This agreement included the following language:

> The father will pay child support, in accordance with the Tennessee Child Support, in the amount of $1,400.00 per month starting in December 2007, until Marisa reaches the age of 18. The father shall maintain the support unless a proven financial hardship befalls the father, at which time the father may request to have child support modified. The parties affirmatively acknowledge that they will discuss the amount of reduction of child support at the time Marisa reaches 18.

In May 2011, in anticipation of Marisa reaching 18 years of age, Petitioner filed his petition to modify child support. Petitioner requested that the Trial Court modify his child support given the parties' two eldest children reaching age 18. Petitioner also asked the Trial Court to decrease the amount of child support he owed towards the remaining minor child based upon an alleged decrease in his income. Discovery ensued. The Trial Court referred this matter to a master for certain findings of facts and conclusions of law. In September 2013, this matter was heard by the Special Master. We quote now, in part, from the Special Master's detailed findings:

> The Special Master finds and does so hold that the Petitioner does owe an arrearage in child support to the Respondent after he admittedly reduced his child support payments from $1,400.00 per month to $400.00 per month in April, 2012 without the authority of a court order.

> \*\*\*

> The Special Master finds that the parties agreed and this Court so ordered on January 21, 2008 that the Petitioner would pay child support in the amount of $1,400.00 per month beginning in December, 2007 and that this Order has not been amended or set aside by any subsequent order. Therefore, the Special Master hereby awards to the Respondent and against the Petitioner the monetary difference between $1,400.00 per month and the actual amount received by the Respondent from and after February, 2012 through the final disposition of this case.

***

The Petitioner is the President and sole shareholder of his employer, Eagle CDI, Inc. (hereinafter the "Company"). The Petitioner willfully and voluntarily, as the President and sole shareholder of his employer, chose to reduce his income to $600.00 per week. The Company's U.S. Corporate Income Tax Returns indicated gross receipts as follows: 2009 = $485,124; 2010 = $807,997; and 2011 = $433,642. However, it appears that the 2011 Eagle CDI, Inc.'s U.S. Corporate Income Tax Return may have understated the Company's gross receipts. The Eagle CDI, Inc. Business Tax Report for Sevier County, Tennessee for the Filing Period Ending 09/2011 indicated total gross sales of $536,021. The Profit and Loss Statement for Eagle CDI, Inc. for 2012 indicates gross sales in an amount of $674,337. However, the Eagle CDI, Inc. Business Tax Report for Sevier County, Tennessee for the filed on 10/12/12 indicated total gross sales of $885,964. Further, the P&L for the first half of 2013 indicates gross sales in an amount of $517,000. It should be noted that the Company files its corporate taxes on a fiscal year beginning August 1 and ending on July 31. Further, the Business Tax Reports for Sevier County, Tennessee are filed for a period ending in September of each year. The Company owns two (2) vehicles of which the Petitioner drives one 90% of the time. The vehicle payment, insurance, gas and maintenance is paid by the Company. The Petitioner has a debit card for the Company which he uses for expenses and a Shell card for gas. The Petitioner lives in a former customer's home on Paradise Lane without paying rent. The Company pays for the Petitioner's cellular phone. The Petitioner recently purchased a BMW for approximately $38,000.00 and is paying $700.00 per month toward the purchase of the BMW. As a result of personal bankruptcy filed by the Petitioner, he currently owes no debts. Although the Petitioner claimed that as a result of the failing economy and his filing of personal bankruptcy, the Company was no longer able to maintain the level of income it had before, for this reason he had no choice but to lower his income from the Company. However, during the years at issue, the Company's gross receipts appear to have continued at a fairly steady pace, if not at an increasing rate. The inconsistencies in the financial reports required to be filed by the various County, State and Federal agencies makes it very difficult, if not impossible, to accurately determine the actual gross receipts of the Company for these years. However, the Special Master finds from all the evidence presented that the Company has not suffered economically as the Petitioner would have the Court believe. For the foregoing reasons,

the Special Master finds and does so hold that the Petitioner is "Willfully and Voluntarily Underemployed" pursuant to Rule 1240-2-4-.04 of the Tennessee Child Support Guidelines.

***

The Special Master has previously noted in its discussion of Issue F that there were numerous inconsistencies in the gross receipts for Petitioner's Company between the Federal Income Tax Returns, the Profit and Loss Statements and the Business Tax Reports for Sevier County, Tennessee. Michael Whitlock, CPA, an expert witness for the Respondent, testified in great detail regarding multiple errors in the Petitioner's personal Federal Income Tax Returns from 2007 through 2011 resulting in understated income. Mr. Whitlock further testified that the Petitioner's 1040's were no way, shape or form reliable. With regard to the Company's QuickBooks, Mr. Whitlock testified that he was unable to access the files that made up the balance sheet and income statement for the Company because of a safety measure placed on the drive. From the QuickBooks for the Company provided by the Petitioner, Mr. Whitlock printed the balance sheet at July 31, 2011 and the P&L for the year ending July, 2011 and compared those financial statements with the ones the Company had provided to their accountant, Jennifer Blackwood at HG&A CPA firm and found that the numbers had been changed. He also printed the March 21, 2012 Balance Sheet and compared the numbers with the application filed by the Petitioner on the Tennessee Contractor's License, Notice of Renewal, Balance Sheet faxed on March 21, 2012. He questioned the reliability of the records kept by the Company. Mr. Whitlock was unable to determine the Petitioner's income from his 1040's because of improper treatments. Mr. Whitlock performed a complex analysis of the Company Federal Returns coupled with the QuickBooks information and created a spreadsheet summary of the tax returns from 2008 to the unadjusted information for 2013. This Exhibit shows the Petitioner's salary alone to be as follows: 2008=$62,400; 2009=$63,600; 2010=$62,400; 2011=$62,400; 2012=$31,800; and unadjusted 2013=$31,200. After adjusting for side jobs the Petitioner admitted he has been doing, rent he has received, amortization, director's fees, and depreciation deductions, then adding meals and entertainment, meeting expenses, travel, telephone, utilities and auto repairs (which includes a myriad of expenses), the spreadsheet shows a total income to the Petitioner as follows: 2008=$171,710, 2009=$156,702; 2010=$122,846; 2011=$154,062; 2012=$81,539, and 2012 restated = $87,062. On the second page of

Exhibit 25, Mr. Whitlock analyzed the Petitioner's income. Based on his analysis of the increase in the average monthly bank balance in the Company's account from 2009 to 2013, the increasing gross revenue each year and the other information provided to him, he rendered his opinion that the Petitioner could have paid himself $119,662 in 2012 and $102,400 to date in 2013. Based upon the foregoing evidence and the testimony of all relevant witnesses, the Special Master finds and does so hold that the Petitioner failed to produce "Reliable Evidence of Income" as defined by Rule 1240-2-4-.04 of the Tennessee Child Support Guidelines requiring the court to impute income to the Petitioner for child support purposes.

Taking the Petitioner's 2008 salary alone of $62,400 as reported on the Company's Federal Tax Return, and applying a ten percent (10%) increase per year pursuant to the Tennessee Child Support Guidelines, Rule 1240-2-4-.04(3)(a)2.(iv)(II)III., the Petitioner's gross income for child support purposes would be $100,496 in 2013. By adding in the director's fees paid to the Petitioner in 2008 of $30,000 to the salary of $62,400, the 2008 gross income would have been $92,400, and the result in 2013 gross income for child support purposes after applying the ten percent (10%) increase pursuant to the Rule cited above would be $148,811. Mr. Whitlock testified that it was his opinion for child support purposes the Petitioner's gross income would be $120,000 plus. The Special Master takes judicial notice that the economy has certainly suffered between 2008 and 2013. The Special Master also notes that the Petitioner has filed personal bankruptcy during this period and no longer has as many business interests that he had a few years ago. The Special Master must give the Petitioner the appropriate credit due for successfully piloting his business through several tumultuous years when many other like businesses failed. However, following the Tennessee Child Support Guidelines the Special Master believes that the appropriate gross income for child support purposes for the remaining minor child would be between $100,496 and $148,811. Therefore, based on the foregoing reasons, the Special Master finds and does so hold that the gross income of the Petitioner for child support purposes for the remaining minor child shall be set at $125,000.00. Further, the Special Master holds that this amount shall not be modified until the remaining minor child reaches eighteen (18) years, and if while in high school until the minor child graduates from high school or until the class of which the minor child is a member when the minor child attains eighteen (18) years of age graduates, whichever occurs last. The Respondent shall maintain primary physical custody of the party's minor child, barring any extremely extraordinary circumstances occurring, and the

parties shall freely share quality time with the minor child that shall be purposely planned and calculated to be in the minor child's best interest and not necessarily in the best interest of the parties. The Petitioner shall have the use of the income tax deduction for the minor child for so long as he is paying child support; provided, however, if at any time after this order becomes effective, the Petitioner fails to pay the Court ordered child support for two consecutive months, the Petitioner shall forfeit the income tax deduction for the minor child and the Respondent shall have the use of said deduction until the minor child reaches eighteen (18) years, and if while in high school until the minor child graduates from high school or until the class of which the minor child is a member when the minor child attains eighteen (18) years of age graduates, whichever occurs last.

(internal citations omitted).

Each party filed exceptions to the Special Master's findings. Following a hearing in March 2014, the Trial Court entered an order adopting the Special Master's findings as follows: "That the Special Master's Report filed January 8th, 2014, not modified directly herein, is approved and shall become an Order of this Court being incorporated by reference as if set out fully herein." The Trial Court entered arrearages for Petitioner in the amount of $15,637, covering July 2011 through March 2014. For the remaining minor child, child support from Petitioner was set in the amount of $1,008 per month. Respondent was awarded $19,421.60 in attorney's fees and costs. All of the Special Master's fee, $11,380, was assessed against Petitioner. The September 2014 final order clarified that the date of Petitioner's reduction in child support due to the aging out of the child was the date of the final hearing, March 31, 2014. Respondent also was awarded $4,177 in additional attorney's fees over Petitioner's objection that no fees related to the Special Master exceptions hearing were requested. Petitioner timely appealed to this Court.

## Discussion

Although not stated exactly as such, Petitioner raises four issues on appeal: 1) whether the Trial Court erred in finding that the effective date of the modification of child support was March 31, 2014, rather than the date of the child's reaching age 18; 2) whether the Trial Court erred in awarding Respondent her attorney's fees incurred in opposing Petitioner's petition to modify child support; 3) whether the Trial Court erred in assessing all of the Special Master's fee to the Petitioner as sanctions; and, 4) whether the Trial Court erred in finding that Petitioner was willfully and voluntarily underemployed and erred in its calculation of Petitioner's gross income for purposes of calculating his child support obligations as to the youngest child. Respondent raises the additional issue

-6-

of whether the record is sufficiently complete such that we can effectively conduct appellate review. Respondent also requests attorney's fees incurred on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). However, as to the concurrent finding of a trial court and master, our standard of review is quite narrow as discussed in *In re Estate of Ladd*:

> Where there has been a concurrent finding of the Special Master and Chancellor, this Court may not disturb the concurrent findings. Tenn. Code Ann. § 27-1-113. A concurrent finding of a master and chancellor is conclusive on appeal, except where it is upon an issue not proper to be referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence. *Coates v. Thompson*, 713 S.W.2d 83, 84 (Tenn. Ct. App. 1986). This standard of review is similar to our standard when reviewing a jury verdict; we must affirm if there is any material evidence to support the trial court's concurrence. *See Id.*; Tenn. R. App. P. 13(d).

*In re Estate of Ladd*, 247 S.W.3d 628, 636-37 (Tenn. Ct. App. 2007).[2]

We first address Respondent's issue of whether the record is adequate for us to conduct appellate review. In particular, Respondent cites to the absence in the record of the transcript of the final hearing before the Trial Court. According to Respondent, we are left only to affirm the Trial Court's judgment in the absence of a properly-preserved record. We disagree.

The record on appeal in this case contains three volumes of technical record, three volumes of transcript, and 27 exhibits. We have available the transcripts of the Special Master's hearing. We also have the detailed orders of the Trial Court reflecting its awareness of and judgment relating to the issues in this case. We find that the record is adequate such that we may conduct appellate review of the specific issues raised on appeal.

---

[2] This more stringent standard of review applies also to the concurrent findings of a master and a circuit court. *Franklin v. DeKlein-Franklin*, No. E2007-00577-COA-R3-CV, 2008 WL 1901113, at \*18 (Tenn. Ct. App. Apr. 30, 2008), *no appl. perm. appeal filed*.

We next address whether the Trial Court erred in finding that the effective date of the modification of child support would be March 31, 2014, the date of the final hearing by the Trial Court, rather than the date of the child's turning 18. Respondent argues that the Trial Court had the discretion to choose the date and that we should not disturb this discretionary decision.

This Court has stated:

The trial court's ruling was likely the result of the application of Tenn. Code Ann. § 36-5-101(f)(1) and cases such as *Huntley v. Huntley*, 61 S.W.3d 329 (Tenn. Ct. App. 2001). The statute provides in relevant part that no child support order may be modified retroactively "as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties." Tenn. Code Ann. § 36-5-101(f)(1). The court in *Huntley* held that the trial court has the discretion "to order the modification effective as of the date of the modification petition, the date of the final hearing, or any appropriate date in between." *Huntley*, 61 S.W.3d at 339 (*citing Bjork v. Bjork*, No. 01A01-9702-CV-00087, 1997 WL 653917 at *8 (Tenn. Ct. App. Oct. 22. 1997) (no Tenn. R. App. P. 11 application filed)); *see also Ingle v. Ingle*, No. E2001-02802-COA-R3-CV, 2002 WL 1798545 (Tenn. Ct. App. Aug. 6, 2002) (no Tenn. R. App. P. 11 application filed).

These principles do not apply, however, to reduction of child support due to a child's reaching the age of majority and the concomitant expiration of the parental duty to support. First, except in statutorily defined situations not present here, a court has no authority to order child support beyond majority, or beyond the time established by statute. Consequently, an order of support for a particular child expires at the time the child reaches majority.

Second, our courts have also taken the position that a reduction in child support due to the emancipation of a child should not be considered a modification as that term is used in Tenn. Code Ann. 35-5-101(f)(1), but instead is simply the application of a rule of law derived from the legal principle that parents generally owe no duty of support to their adult children. *Clinard v. Clinard*, No. 01-S-01-9502-CV00021, 1995 WL 563858, at *2 (Tenn. Sept. 25, 1995) *pet. reh'g denied* (Nov. 6, 1995); *Lichtenwalter v. Lichtenwalter*, No. M2003-03115-COA-R3-CV, 2006 WL 236945 (Tenn. Ct. App. Jan. 30, 2006)(*rev. on other grounds*, July 12, 2007); *Bell v. Bell*, No. 1A01-9511-CH00493, 1996 WL 548150 (Tenn. Ct.

App. Sept. 25, 1996).  The Tennessee Supreme Court has specifically stated that proration of child support for an emancipated child "is not a retroactive modification of the child support award and its application does not require a petition to, or an order from, the court."  *Clinard*, 1995 WL 563858, at *2.

*Brooks v. Brooks*, M2007-00351-COA-R3-CV, 2009 WL 928283, at *6 (Tenn. Ct. App. Apr. 6 2009), *no appl. perm. appeal filed*.

We do not take issue with Respondent's characterizing the selection of an effective modification date as a discretionary decision by the Trial Court.  Even discretionary decisions, however, are not totally immune from review.   In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000).  It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999).  Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).  The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996).  An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007).  A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous

assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

Petitioner argues persuasively that the Trial Court should have selected a less arbitrary date, namely that of the June 14, 2011 aging out of the child. Indeed, June 14, 2011 is the only date consistent with the case law cited above and the explicit expectations of the parties in their agreed parenting plan. In our judgment, the Trial Court erred in designating the date of the final hearing, March 31, 2014, as the effective modification date as such a date is contrary both to Tennessee law and the agreement of the parties. We reverse the Trial Court as to this issue, and remand for a new calculation of Petitioner's arrearages or credits, if any, taking into account what Petitioner has paid through the hearing on remand.

We next address whether the Trial Court erred in awarding Respondent her attorney's fees incurred in opposing Petitioner's petition to modify child support. Petitioner advances two main arguments: (1) that he was in fact the successful party, and, therefore, he should receive attorney's fees under Tenn. Code Ann. § 36-5-103(c), and (2) the section of the parties' parenting plan requiring a party who files a petition against

the other to be responsible for all attorney's fees and court costs is not enforceable. Tenn. Code Ann. § 36-5-103(c) (2014) provides:

> (c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Respondent argues that she prevailed in that Petitioner was unsuccessful in obtaining his full desired reduction of child support obligation for the remaining minor child. An award of attorney's fees pursuant to the above statute is discretionary. While Petitioner obtained relief as to the elder children and did receive a reduction in child support, Respondent also prevailed on the issue of the amount of Petitioner's income and alleged underemployment. Both sides can be said to have prevailed in part both at trial and now on appeal. This being the case, we do not find that the Trial Court abused its discretion in awarding Respondent her attorney's fees. We need not consider whether the clause in the parties' parenting plan regarding responsibility for attorney's fees is unenforceable as we find the attorney's fees were properly awarded to Respondent pursuant to Tenn. Code Ann. § 36-5-103(c).

We next address whether the Trial Court erred in assessing all of the Special Master's fee to the Petitioner as sanctions. Petitioner cites to no law on this issue. Petitioner argues "there is not sufficient evidence to justify the award of sanctions against the Appellant, and that the assessment of all the Special Master's fees against the Appellant is contrary to the weight of the evidence." This Court has stated: "The taxing and assessing of costs by the trial court, including fees for a special master and costs associated with proceedings before a master, rests in the discretion of the trial court." *Parks v. Eslinger*, No. M1999-02027-COA-R3-CV, 2003 WL 237597, at *24 (Tenn. Ct. App. Feb. 4, 2003), *no appl. perm. appeal filed*. Respondent alleges that Petitioner was uncooperative and generally obstructive throughout the discovery process. Petitioner, in turn, argues that Respondent was equally contentious. The record supports both propositions in part. Nevertheless, this issue again implicates a trial court's discretion, and we find no reversible error in the Trial Court's assessing all of the Special Master's fee to Petitioner.

The final issue we address is whether the Trial Court erred in finding that Petitioner was willfully and voluntarily underemployed and erred in its calculation of Petitioner's gross income for purposes of calculating his child support obligations as to the youngest child. As cited above, where a trial court and master reach concurrent findings, our standard of review is akin to that of a jury trial. In other words, it is a very stringent standard. In the present case, the Special Master made detailed findings, laid out in relevant part above, as to Petitioner's income, employment, and finances. The Trial Court adopted the Special Master's findings as pertinent to this issue. The evidence in the record on appeal contains material evidence supporting both Petitioner's and Respondent's positions. This being so, the findings of the Special Master as adopted concurrently by the Trial Court must be affirmed under the applicable stringent standard of review. We affirm the concurrent findings of the Special Master and the Trial Court as they pertain to Petitioner's income and underemployment.

In summary, we reverse the Trial Court in its designation of March 31, 2014 as the effective date of modification of child support, and instead designate June 14, 2011, the date of Marisa's turning 18, as the effective date for reduction. We remand this case for the Trial Court to recalculate Petitioner's arrearages or credits, if any, including what he has paid through the hearing on remand. In all other respects, we affirm the judgment of the Trial Court. We decline to award either side their attorney's fees incurred on appeal.

### Conclusion

The judgment of the Trial Court is affirmed, in part, and, reversed, in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed equally one-half against the Appellant, Daniel W. Mitchell, and his surety, if any, and, one-half against the Appellee, Tricia Lurlene Hall.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-12-